## Pavlinko Estate.

Argued March 18, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Francis Taptich,* for appellant.

*John A. Metz, Jr.,* with him *Ralph C. Davis, Joseph B. Mitinger,* and *Metz, Cook, Hanna & Kelly,* for appellees.

OPINION BY MR. JUSTICE EAGEN, May 4, 1960:

These two appeals involve issues arising out of the same estate (Vasil Pavlinko, deceased).

## Appeal No. 165

. This review is concerned with the ownership of the balance on deposit in a savings account created by the decedent during his lifetime. The facts are not in dispute. The deceased, Vasil Pavlinko, and Hellen Pavlinko, his wife, during their lifetime owned a joint savings bank account. Hellen died on October 15, 1951. On October 22, 1951, the balance on deposit was $5,-098.74, and the surviving husband changed the title to the bank account to read, "Vasil Pavlinko in trust for Elias Martin." (The latter was a brother of the deceased, Hellen Pavlinko). Two additional deposits and no withdrawals during his lifetime caused the account to increase and show a balance in the amount of $7,294.49 as of the date of his death on February 8, 1957. At no time during his lifetime did Vasil Pavlinko surrender control of the bank account to Elias Martin and no change in the title to the account was ever made subsequent to October 22, 1951.

The balance on deposit was withdrawn from the bank by Elias Martin on February 28, 1957. The administratrix of the deceased's estate sought a citation to compel repayment of this money to the estate. The petition was dismissed and an appeal from that order followed.

The lower court's order was correct. *Scanlon's Estate,* 313 Pa. 424, 169 Atl. 106 (1933) clearly controls the issue involved. Therein this Court restated and ap-

proved the principle adopted by the American Law Institute in the Restatement, Trusts (§58) namely, that, "Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person, intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the *intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.*" As pointed out in comment a, "If a person makes a savings deposit in a bank in his own name 'as trustee' for another person, his intention may be either (1) to create a revocable trust, or (2) to create an irrevocable trust, or (3) not to create a trust. Evidence may be admitted to show which was his intention. *In the absence* of evidence of a different intention of the depositor, the mere fact that *a deposit is made in a savings bank in the name of the depositor 'as trustee' for another person is sufficient to show an intention to create a revocable trust.* To such a trust the rule stated in this Section is applicable. Such a trust is called a 'tentative trust.'" Under such circumstances, the depositor may at any time withdraw any part of the deposit during his lifetime, or by will, but *on his death the beneficiary is entitled to the amount remaining on deposit if the depositor has not revoked the trust.*

The order of the court involved in this appeal is affirmed. Costs to be paid by the appellant.

## Appeal No. 89

This appeal is from the order of distribution by the lower court in the Estate of Vasil Pavlinko, deceased. The disposition of the issue hinges upon the legal validity and significance of a writing executed and de-

livered by the decedent during his lifetime to Elias Martin and Anna Martin, his wife. It reads as follows:

"Oct. 22, 1951

"This is an article of agreement

"I Vasil Pavlinko promise and agree to Elias and Anna Martin to pay for all services rendered to me during my life time. You just pay my debts and keep the rest of my estate. I Elias and Anna Martin, promise and assure you that we'll take care of you to the best possible point, but, in case we die before you, we have five children and will instruct them to take care of you.

"Proposition excepted by both parties.

"His  X  Mark
"Vasel Pavlenko
"Elias Martin
"Ann Gula."

It was written in longhand by Ann Gula, daughter of the Martins, on a Sunday afternoon (October 21, 1951) in the presence of, and as a result of a conversation had between, her parents and the decedent in the latter's home. The writing was purposely dated the twenty-second day of the month in order to avoid any possibility of invalidity because of its having been executed on Sunday. The scrivener, Ann Gula, signed as a witness. Following Vasil Pavlinko's death, the Martins, at the audit in Orphans' Court of Allegheny County, made a claim for the entire balance remaining in the estate after payment of debts and costs of administration. Their claim was based upon the writing set out above. The court, after an exhaustive hearing, filed an opinion including relevant and adequate findings of fact awarding the distributable balance to the Martins. Exceptions to the decree were dismissed by

the court en banc. One of the decedent's nieces, an intestate heir, appealed.

It is established beyond argument that the findings of fact of the auditing judge, sitting as a chancellor, which are based on competent and adequate evidence are controlling in this appellate review: *Snyder Estate*, 368 Pa. 393, 84 A. 2d 318 (1951). A close examination of the record discloses that the facts, as found by the court below, are sustained by substantial and competent testimony. In view of these findings the ultimate conclusion followed inevitably and logically. It appears that beginning in the year 1930 and continuing to the year 1949, the appellees, the Martins, spent many hours and days assisting the deceased and his wife in the operation of their farm. Elias Martin harvested crops, repaired fences, cleared the land, cared for the horses and rendered many other valuable chores. Anna Martin helped in the canning of fruits and vegetables, cleaning the house and even helped till the land. On March 19, 1949, Vasil and Hellen Pavlinko in appreciation of the Martins' friendship caused separate wills to be prepared by their lawyer in each of which Elias Martin was named as residuary legatee, to take after the death of the survivor of them. The wills executed in their lawyer's office were by mistake signed in a manner which vitiated them. Vasil Pavlinko signed the intended will of his wife and she signed the testamentary document to which he should have attached his signature. The mistake was not discovered until after the death of Vasil Pavlinko. The facts and legal incidents of this unusual situation are more fully disclosed in *Pavlinko Will*, 394 Pa. 564, 148 A. 2d 528 (1959).

Hellen Pavlinko died October 15, 1951. Following this and continuing to the date of her husband's death on February 8, 1957, the Martins performed many valuable services which rendered his last years

easier and happier. In short, as the chancellor found, the appellees performed their part of the bargain and the responsibilities assumed under the writing of October 21, 1951.

The court below ruled that the contract upon which the Martins' claim is based was valid and executed with full knowledge of its import. While the decedent spoke only a limited amount of English and spoke and understood chiefly his native Slavonic tongue, the contract was read to him in the language he understood and was fully discussed with him in this language before he attached his mark thereto. The court below, fully cognizant of the principle that a contract, entered into under such circumstances as this case presents, should be scrutinized with great care, ruled in favor of its validity. There is sufficient evidence in the record to sustain this conclusion, and, of course, the hearing judge was in a much better position to accredit credibility than we who must rely upon the printed word. The court said, "Vasil Pavlinko was approximately seventy-seven years of age when his wife died. Although it appears from the testimony that both his physical and mental health were excellent for a man of his age, it was most natural that he would anticipate the need of help and care as he advanced in age. In view of the relationship which existed between Vasil Pavlinko and the Martins for many years prior to the death of his wife, it is most natural that, being childless, he would turn to them for the future care and help the need of which he anticipated, and that they would respond. The execution of a written contract by Vasil Pavlinko and the Martins was a prudent and common sense act."

As a matter of law contracts for services rendered during life and to be paid for after death, are not unusual and the validity of such agreements has previously been recognized by the appellate courts of Pennsyl-

vania: *Grierson Estate,* 159 Pa. Superior Ct. 421, 48 A. 2d 102 (1946); *Manone v. Culp,* 350 Pa. 319, 39 A. 2d 1 (1944).

Having found that a valid contract existed, the lower court correctly construed its legal meaning. The language thereof was simple, the intent clear. The writing is not only the best evidence of the intention of the parties, it is the only extrinsic evidence of what they desired to promise and to assume: *Keleher v. LaSalle College,* 394 Pa. 545, 147 A. 2d 835 (1959). As found by the court below Vasil Pavlinko, in consideration for services received from the Martins, agreed to compensate them at his death, the remuneration to have consisted of the value of his entire estate at the time of his death less all debts.

The testimony of Ann Gula, the scrivener, was relied upon to prove the circumstances incident to the execution of the contract. It is argued that she was a party to the contract, that she had an interest adverse to the decedent, and that she was therefore incompetent to testify under the provisions of the Act of May 23, 1887, P. L. 158, §5(e), 28 PS §322. The lower court correctly answered this objection in the following language: "Although Ann Gula, the claimant's daughter and scrivener of the contract, signed it, her name does not appear in the contract and she undertakes no contractual obligation therein. She denies that she signed the contract as a contracting party, and, in view of her lack of formal education, her explanation of her reason for signing—her belief that a person who prepares a contract for other persons is required to sign it—is believable. Since neither Ann Gula nor Michael Gula, her husband, is a party to the contract, they are competent witnesses to prove its execution. Although the relationship of Ann and Michael Gula to Elias and Anna Martin, the claimants, does not make them incompetent witnesses, it is a factor to be

taken into consideration in evaluating the credibility of their testimony."

For a person to be rendered an incompetent witness by the rule pertaining to deceased parties, he must have an interest adverse to that of the decedent. As stated in *Hendrickson Estate,* 388 Pa. 39, 130 A. 2d 143, 146 (1957): "Under this exception three conditions must exist before any such witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest." Again in discussion of this question, this Court said in *Gaston Estate,* 361 Pa. 105, 108, 109, 62 A. 2d 904 (1949): "The law applicable to the instant question was stated by Justice GIBSON in Wolf v. Carothers, 3 S. & R. 240, as follows: 'To exclude a witness, it is necessary that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility.' "

The witness, Ann Gula, not having been a party to the contract, had no interest flowing therefrom upon which a judgment in this action could operate. The fact that she is the daughter of the claimants is not, in itself, sufficient to disqualify her as a witness.

We have studied all of the contentions urged by the appellant and conclude that they are without legal merit.

The decree of the court below is affirmed. Costs to be paid by the appellant.