Beeruk Estate.

Argued November 16, 1967.  Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John M. Dudrick,* for Wladyslaw Biruk.

*John J. McCarty,* with him *Henry C. McGrath, Leon E. Sperling,* and *Richter, Lord, Cavanaugh, McCarty & Raynes,* for Mary Beeruk.

OPINION BY MR. JUSTICE ROBERTS, April 16, 1968:

We are faced with cross appeals from a decree dividing the residue of Frank Beeruk's estate between his widow and his nephew, Wladyslaw Beeruk.  Frank Beeruk's first wife died in 1959; at approximately the time of her death, Frank consulted with an attorney concerning the emigration from Poland of his only living relative, his nephew Wladyslaw.  After an extensive exchange of correspondence, Wladyslaw and his family (a wife and two children) arrived in the United States in January of 1963.  Several days after Wladyslaw's arrival, decedent and his nephew visited decedent's attorney at which time a will was prepared pursuant to decedent's directions.  This will, properly executed, left the residue (after three pecuniary bequests totaling $600) of Frank's estate to Wladyslaw and his

wife, Jadwiga, or the survivor of them. The will was prepared by decedent's attorney, T. G. Wadzinski, and was executed by decedent. Mr. Wadzinski testified that while the will was being typed the decedent said to him: "I promised Wadek [the nephew] if he came over I would give him my estate and I am doing it now." (Record at 73a-74a.)

Decedent then remarried and in April of 1964 executed a new will, leaving the same pecuniary bequests but giving the residue to his new wife. Upon his death, the 1964 will was probated; Wladyslaw filed a claim for the entire residue contending that decedent had contracted to leave the residue to him. We are convinced that the court below properly applied the principles contained in our most recent case concerning contracts to make wills, *Fahringer v. Strine Estate,* 420 Pa. 48, 216 A. 2d 82 (1966), and that it correctly concluded that Wladyslaw had demonstrated that decedent had contracted to leave the residue of his estate to his nephew.

Of the issues considered by the court below,[1] only

---

[1] The widow contends that Wladyslaw failed to furnish part of the contemplated consideration, i.e., he failed to look after and take care of decedent. However, it is well settled that failure of consideration is an affirmative defense and the burden of proof rests with the party asserting this defense, here the widow. See, e.g., *Poelcher v. Zink*, 375 Pa. 539, 101 A. 2d 628 (1954) ; *Brauner v. Corgan*, 316 Pa. 196, 173 Atl. 397 (1934). Having failed to introduce any evidence that Wladyslaw did not furnish part of the bargained for consideration, the widow did not meet her burden of proof.

She further insists that testimony of Wladyslaw and his wife was inadmissible under the Dead Man's Act. However, we agree with the trial court that the record demonstrates that, whatever may be the merit in this objection, counsel for the widow waived it by failure to object.

Mrs. Beeruk also asserted that correspondence prepared by Attorney Tomascik on behalf of Mr. Beeruk was inadmissible because the record fails to show Tomascik's express authority. Only

two are of sufficient difficulty to warrant discussion. The widow first contends that the oral contract proven by the nephew covered both real and personal property and was therefore violative of the statute of frauds. This issue, as framed by the parties, involves a question of whether the 1963 will is a sufficient memorandum to satisfy the statute. It is clear that the will does not refer to the oral contract. Although the majority rule in other jurisdictions appears to be that a will, to constitute a sufficient memorandum, must refer to the alleged contract,[2] the Pennsylvania cases on this point are not decisive. *Shroyer v. Smith,* 204 Pa. 310, 54 Atl. 24 (1903) states that parol is admissible to demonstrate the link between the will and the oral contract while *Anderson Estate,* 348 Pa. 294, 35 A. 2d 301 (1944) specifically requires that the connection be an explicit reference in the will to the underlying contract. Our latest decision, *Herr Estate,* 400 Pa. 90, 96, 161 A. 2d 32, 36 (1960), cites *Shroyer* to support the rule that the will must be "connected with and support" the contract. However, *Herr* does not answer the question whether the requisite support and connection can be accomplished by parol. Reasoning from the core principles of the statute of frauds, we believe the better rule was stated in *Shroyer.* Professor Corbin tells us:[3] "It [the purpose of the statute] is the prevention of successful fraud by inducing

two objections were voiced to this testimony at the hearing, one on the grounds of relevancy and the other on the theory that the attorney-client privilege was being violated. The ground of objection urged here is thus not the one urged below and is thus deemed to have been waived. See, e.g., *Risbon v. Cottom,* 387 Pa. 155, 127 A. 2d 101 (1956).

2 See Annot., Statute of Frauds: Will or Instrument in Form of Will as Sufficient Memorandum of Contract To Devise or Bequeath, 94 A.L.R. 2d 921, 940 (1964).

3 2 Corbin, Contracts §498, at 680-81 (1950).

the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral contracts that have in fact been made; . . . Therefore, we should always be satisfied with 'some note or memorandum' that is adequate . . . to convince the court that there is no serious possibility of consummating fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail."

Our cases are in accord with Professor Corbin's analysis. The statute itself contains no directive as to what writing constitutes a sufficient memorandum. See Act of March 21, 1772, 1 Sm. L. 389, §1, 33 P.S. §1. However, decisions demonstrate that a sufficient memorandum need contain only two basic items: (1) a sufficient statement of the *terms* of the agreement, *Prager v. McAdam*, 399 Pa. 405, 161 A. 2d 39 (1960), affirming on the opinion of the court below, 20 Pa. D. & C. 2d 314 (C.P. Butler Cty. 1960), and (2) the signature of the grantor, i.e., the party against whom enforcement is sought, *DiBenedetto v. DiRocco*, 372 Pa. 302, 93 A. 2d 474 (1953). The will signed by decedent certainly states the terms of his agreement to leave the residue of his estate to his nephew.

Furthermore, *Liggins Estate*, 393 Pa. 500, 143 A. 2d 349 (1958) has impliedly, albeit sub silentio, overruled any requirement contained in *Anderson* that the will must specifically refer to the alleged contract. In *Liggins*, a husband and wife in 1951 executed mutual wills leaving the residue of their estates to the survivor; after the death of the wife, the husband's will was destroyed and new mutual wills executed between the husband and his son-in-law, leaving the property in

question to the survivor. The son-in-law then changed his will. The issue presented was whether the son-in-law's will was irrevocable which in turn depended upon whether the will was made pursuant to a contract to make mutual wills. We clearly held that it was not necessary for either the will of the husband or the son-in-law to state that it was made in conformity with a contract and permitted proof by parol testimony (by the scrivener, as here) that the husband and son-in-law had contracted to make mutual wills. Where the parol evidence is clear that the will was intended to embody the terms of the contract, under our cases, no substantial possibility of fraud is present and we should not additionally require that the will refer to the contract.

Our disagreement with the court below turns on the last issue—whether the nephew is entitled to decedent's entire estate less the three charitable bequests of $600. The widow argues that at best the nephew is entitled to damages based upon the value of the services he rendered. Support for this view can be found in dictum contained in *Fahringer v. Strine Estate,* supra at 50 n.1, 216 A. 2d at 84 n.1: "[I]f the contract established a promise by decedent to give not a specific amount but an amount vague or undetermined, such as 'the 'whole' or 'part' of his estate, then the measure of damages would be the value of the services rendered and not the estate promised to be given." Cited are several cases which do support this rule; however, the Court does not mention cases such as *Pavlinko Estate,* 399 Pa. 536, 160 A. 2d 554 (1960) in which a claimant successfully recovered the entire estate and the contract promised decedent's entire estate in exchange for services rendered.[4]

---

[4] The widow seeks to distinguish *Pavlinko* on the theory that there the contract was written while here it is oral. However, there are for these purposes only two types of contracts—those

The dictum in *Fahringer* is disapproved and the cases upon which it relies are overruled. The *Fahringer* Court also recognized the rule that if the claimant proves an oral contract for a specific sum of money he need not prove the value of his services and may recover the specific sum proven. The operation of these rules would create results which have no rational justification. For example, assume decedent's entire estate contains property worth $100,-000. If the oral contract is for $50,000, claimant can recover that amount; but if the contract is for one-half of the estate, recovery will be allowed under *Fahringer* only on the basis of the services rendered. Finding no justification for this difference, we choose to reaffirm *Pavlinko* and allow the nephew to recover without any proof of the value of his services. The other alternative—requiring proof of services in both types of case—is not, in our view, sound. The decedent is best able to determine the terms of his bargain and, in essence, to require proof of services is to insist that the decedent is not the best judge of the adequacy of the consideration he bargained for. Furthermore, the circumstances here illustrate that the operation of a rule requiring proof of services would work a serious injustice. In great measure, the consideration furnished by the nephew was his emigration to this country and the consequent disruption this caused to both himself and his family.[5] In terms of services, such consideration is incapable of evaluation.

---

that violate the statute of frauds and those that do not. Once it is decided that the contract does not violate the statute, there is no distinction between oral and written contracts as to the measure of damages.

[5] The nephew testified that he owned a farm in Poland and that he sold this property in the belief that his uncle would provide for him upon his arrival.

Following what it considered to be equitable considerations,[6] the court below awarded one-half of the residue to the widow, analogizing her position to that of a surviving spouse electing to take against her husband's will. This analogy is not apt. An adjudication that decedent breached his contract with his nephew places the nephew in the status of a creditor of the estate. See, e.g., *Huffman v. Huffman*, 311 Pa. 123, 166 Atl. 570 (1933). He is entitled to the priority given to creditors under the Fiduciaries Act of 1949, Act of April 18, 1949, P. L. 512, §622, as amended, 20 P.S. §320.622 (Supp. 1967). The rights of a creditor are superior to those of a wife taking against a will as surviving spouse. See, e.g., *Pratt Estate*, 422 Pa. 446, 221 A. 2d 117 (1966). As creditor, the nephew is entitled to decedent's entire estate[7] leaving nothing for the wife to take against.

The decree of the Orphans' Court of Luzerne County is vacated and the record remanded for entry of a decree consistent with this opinion. Each party to pay own costs.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I disagree with both aspects of the majority opinion. There was no memorandum sufficient to satisfy the Statute of Frauds, which requirement must be met because the alleged contract included real property. Not only do almost all the other jurisdictions which have passed on the question require the superseded will to refer to the alleged contract in order to con-

---

[6] The court below commented: "The court feels Mary Beeruk's position under the circumstances is tenuous, but nonetheless equity dictates that she receive a portion of her husband's estate." Admirable though this view may be, an orphans' court may not substitute its compromise for the result legally required.

[7] Of course, this does not include the three charitable bequests which the nephew does not claim.

stitute a sufficient memorandum to satisfy the statute, as the majority points out, but the latest Pennsylvania case to deal squarely with the problem, *Anderson Estate*, 348 Pa. 294, 35 A. 2d 301 (1944), has required reference in the will to the underlying contract. Although Wladyslaw's case is a most sympathetic one, I can see no reason to retreat from the view expressed in *Anderson*. It is a bootstrapping argument, if ever there were one, to state, as the majority does, that where the parol evidence is clear that the will was intended to embody the terms of the contract, there is a sufficient memorandum to satisfy the statute. The statute is meant to prevent just that sort of bootstrapping, because the possibility of fraud is inherent in the introduction of oral testimony as to the essential terms of the contract, or for that matter, its very existence.

Moreover, even if there were a provable contract, I believe that the majority has chosen the wrong alternative in not requiring proof of the value of the services rendered. I agree with the majority that it makes no sense to distinguish between the situation where the contract establishes a promise to give a specific amount (where the value of the services rendered need not be proven), and the situation where the contract establishes a promise to give an amount vague or undetermined, such as the whole or part of his estate (where the value of the services must be proven).

However, rather than dispense with proving the value of the services in all cases, I think a much more salutary rule would be to require the value to be shown in all cases. Since the creditor does stand ahead of the widow, courts should take pains to prevent the diminishing of the widow's share through the simple expedient of a contract to leave either a specific amount or a portion of the estate in the husband's will.

I would reverse the decree of the court below and award the residue, in accordance with the 1964 will, to the widow.