William J.L. LUBECKI and Bonnie M. Lubecki, Plaintiffs,

v.

OMEGA LOGGING, INC., Defendant.

Civ. A. No. 84–1507.

United States District Court,
W.D. Pennsylvania.

Sept. 24, 1987.
Memorandum Order Dec. 7, 1987.
As Amended Dec. 7 and Dec. 18, 1987.

David L. Cook, Butler, Pa., for plaintiffs.

Rex Downie Jr., Beaver Falls, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

Plaintiffs in this case, William J. L. and Bonnie M. Lubecki, filed a civil complaint against the defendant, Omega Logging, Inc. ("Omega"), on June 20, 1984, alleging that they and the defendant had entered into a written agreement authorizing Omega to purchase and remove certain timber from plaintiffs' property. Plaintiffs assert that Omega unlawfully cut and removed ninety trees, primarily white oak, which were outside the scope of the agreement. They seek monetary damages as a result.

Plaintiffs also seek damages for restoration of certain "skid roads" the defendant made on plaintiffs' property, the cost of removing treetops which defendant left on the property, and for damages relating to nondelivery of certain fence boards.

Omega denied cutting and taking any trees which were not specified by the contract, averring that the ninety trees were cut and sold to one David Taylor in the year previous to Omega's contract with the plaintiffs. Moreover, the defendant alleged that the plaintiffs breached the agreement in removing defendant's log skidders from the site and otherwise preventing Omega from completing the lumbering operation. As a result, Omega asserted that it was no longer responsible for regrading the skid roads. With respect to the treetops left on plaintiffs' property, the defendant alleged that such practice is customary in the industry. Finally, the defendant filed a counterclaim, alleging that the plaintiffs, in breaching the timber sales contract between them and Omega, prevented Omega from removing the balance of timber specified under the contract. Accordingly, defendant seeks damages in the nature of lost profits.

We conducted a nonjury trial in this matter on April 1 and 2, 1987. The plaintiffs testified on their own behalf as to their understanding of their contract with Omega and how they came to suspect that the defendant had removed trees outside the scope of the contract. The plaintiffs also called Mr. Paul Chovan, president of Omega, as on cross-examination. Mr. Chovan testified to the fair market value of different grades of white oak lumber, in terms of board-feet. Finally, plaintiffs presented the testimony of Mr. George Cline, a consulting forester, whom Mr. Lubecki asked to inspect the logging site. Mr. Cline testified that he observed ninety-one freshly-cut stumps of trees, including white oak, which Omega was not entitled to cut under the terms of the contract. Mr. Cline further testified to the amount of board-feet of lumber corresponding to these stumps, based on measurements he took and to which he applied formulae and tables used

by the forestry service. Mr. Cline's measurements and related calculations were attached to plaintiffs' complaint.

The defendant has objected to Mr. Cline's testimony, arguing that no expert's report was filed in support thereof. We reserved ruling on the admissibility of Mr. Cline's testimony until this time. The defendant also moved for involuntary dismissal of plaintiffs' complaint, arguing the plaintiffs had failed to carry their burden of proof as to the amount of damages they seek. In essence, the defendant argues that if Mr. Cline's testimony is inadmissible, insufficient evidence exists to show the amount of any trees wrongfully taken, whereby valuation of any loss is not possible. We took this motion under consideration as well and directed Omega to put in its defense. Omega's sole witness was Mr. Chovan, its president, who testified to his understanding of the contract between Omega and the plaintiffs. Mr. Chovan also estimated Omega's profit loss due to the trees sold to Omega which remain on plaintiffs' property. Robert Taylor, the defendant's subcontractor in charge of the logging operation was scheduled to appear but did not do so.

We now make the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

*Findings of Fact*

The plaintiffs are residents of Pennsylvania; Bonnie Lubecki being a citizen of the United States of America, and William Lubecki being a registered alien and citizen of Canada. Omega is an Ohio business corporation.

On January 18, 1982, the plaintiffs, William J.L. and Bonnie Lubecki, entered into a contract with the defendant, Omega Logging, Inc., for the sale of certain standing timber located on the plaintiffs' property in Butler County, Pennsylvania.

Under the express terms of this contract Omega was to pay $3,000.00 ($500.00 at the execution of the contract and $2,500.00 before cutting the timber) and provide the plaintiffs with 3,500 feet of fence boards in exchange for all timber sixteen inches in diameter or larger standing on a certain tract of plaintiffs' land. *See* Plaintiffs' Ex. # 1. All white oak was excepted from the contract and, in addition to white oak, all red oak located on the west side of a creek running through the tract was to be left standing. Also, Omega was entitled to "timber along Whitestown Road: to be marked by Mr. Lubecki." *Id.* No such marking ever occurred, however, and the defendant did not cut any timber along this road. Plaintiffs further granted to Omega "full and unhindered right of ingress and egress to and from said timber, also the full and unhindered right and privilege of installing and operating on said premises, all necessary saw mill machinery and equipment for the manufacture and removal of said timber within 1 years (sic) from this date." *Id.*

Based on the testimony of Mr. Lubecki and Mr. Chovan we find that the 3,500 feet of boards which Omega was to provide to the plaintiffs were to be made of white oak. Also, as part of the custom and practice of Omega and the logging industry, Omega was to have regraded the main skid roads and landing site it created in cutting and removing the timber. We further find that Omega bore no responsibility for removal of treetops under the custom and practice of it and the industry.

The defendant paid and the plaintiffs received the $3,000.00 specified by the contract. According to Mr. Lubecki, only 2,500 of the 3,500 feet of boards required by the contract were delivered to the plaintiffs, and none of the boards were made of white oak. The defendant, by and through its president, Mr. Chovan, does not contest this point, and we therefore adopt Mr. Lubecki's statements as to the amount and nature of the boards delivered as part of our findings of fact.

Omega, by and through Robert Taylor, an independent subcontractor, began the logging operation in May of 1982 and, again based on Mr. Chovan's testimony, removed part of the standing timber to which Omega was entitled under the contract. During the course of this logging operation, Robert Taylor cut and removed

ninety-one trees to which Omega was not entitled. We base this finding on the testimony of George Cline, who personally inspected the logging site at Mr. Lubecki's request. Mr. Cline testified to observing ninety-one freshly-cut stumps which corresponded to trees outside the terms of the contract, either because said trees were white oak, because the stump diameter of said trees was less than sixteen inches or, in one case, because the stump corresponded to a red oak located on the west side of the creek running through the tract. Mr. Cline testified that he identified the species of the trees cut by examining the bark on the corresponding stumps and tree tops; he further testified that the white oak species was easily identified in such a manner. Mr. Cline also acknowledged finding white oak stumps from a previous logging operation, but he testified that they were readily distinguishable from the freshly-cut stumps. Consequently, we find that plaintiffs' complaint does not relate to any previous logging operation on plaintiffs' property. One tree was left behind on plaintiffs' property, leaving ninety trees which we find to have been taken by defendant without plaintiffs' permission.

Mr. Cline estimated the ninety trees to have contained 18,740 board-feet of lumber: 17,594 board-feet of white oak, and 1,146 board-feet coming from ten trees constituting other than white oak. The measurements are attached to plaintiffs' complaint. Mr. Cline described these estimates as deriving from mathematical formulae and tables available to the forestry service, which indicate the volume in board-feet of a log having a particular length and from a tree having a particular diameter at breast height ("DBH"). The DBH for each tree was, in turn, derived mathematically from the height and average diameter of the stumps which Mr. Cline identified as being outside the contract. The length of the logs was based on actual measurement of the markings created in the ground when the trees fell. Mr. Cline admitted that such measurement leads to a possible maximum eight percent (8%) deviation from the actual length in the cases of trees which slid or moved in some other fashion after falling. However, Mr. Cline estimated that, at most, only twenty percent (20%) of the ninety trees in question moved in such a fashion as to give rise to this deviation.

Plaintiffs, in their proposed findings of fact, have suggested 16,000 board-feet to be the approximate volume of the white oak trees cut and removed by Omega. Based on Mr. Cline's testimony and the possible deviations involved in his measurements, we agree and find 16,000 board-feet to be a fair estimate of said volume.[1]

Insufficient evidence exists from which we can determine the grade or quality of the white oak taken. Consequently, we will consider all of the white oak taken to be "No. 3 common," the least valuable grade of white oak.

Based on the testimony of Mr. Chovan, we find the fair market value of 1000 board-feet of No. 3 common white oak to have been $100.00.

Insufficient evidence exists from which we can determine the value of the ten trees taken by Omega which were outside the contract and not white oak.

White oak is easily identified, according to Mr. Cline. Presumably it could have been identified by Robert Taylor, as a result of his experience as a lumberman, or at least because such knowledge would have been necessary for Mr. Taylor to distinguish those trees outside the scope of the timber contract between the plaintiffs and Omega. Therefore, we resolve any question of intent against Mr. Taylor and Omega. In other words, we find that Mr. Taylor intentionally cut and removed eighty white oak, knowing that he did not

---

1. Since the volume of a log is represented generally by the product of the area of the log's circular cross-section multiplied by its length, a maximum eight percent deviation in length would correspond in a one-to-one ratio with a maximum eight percent deviation in the log's volume. An eight percent deviation in all, not just twenty percent (20%), of the 17,594 board-feet which Mr. Cline attributes to white oak yields a figure of 16,186.48 board-feet. As plaintiffs have proposed an even lower figure of 16,000 board-feet, we will accept this latter figure, giving defendant the benefit of the doubt.

have the authority to do so. We also infer such intent from the large number of white oak taken, and Mr. Taylor's failure to be called and/or appear as a witness.

Mr. Cline inspected the Lubecki property on May 29, 1982, after Mr. Lubecki had become concerned with possible improprieties by the defendant and walked through logging site, assessing the area as having been "devastated." Mr. Lubecki accompanied Mr. Cline through the logging site and, after hearing Mr. Cline's evaluation of the damage, removed some logging equipment—two log skidders—from the job site on Sunday, May 30, 1982. This equipment was later returned to Mr. Taylor, but Mr. Lubecki did not permit the logging operation to continue.

Mr. Taylor notified Mr. Chovan of this situation, and Mr. Chovan then came to Mr. Lubecki to discuss the problem. Mr. Lubecki and Mr. Chovan differ as to the conversation that ensued. We give more weight to Mr. Chovan's version, however, as we find his testimony in general to be more candid, this finding being based on the statements Mr. Chovan made against his own interest as to agreements outside the confines of the written contract, and on the evasiveness which Mr. Lubecki evidenced in answering questions and in his demeanor while testifying. As such, we find that Mr. Chovan offered to inspect the logging site and compensate for any cutting and removal of trees outside the contract. Mr. Lubecki was unwilling, however, to settle the problem other than by resort to a court of law, and, making reference to "excess cuttage," he terminated the logging operation. Accordingly, the parties are presently before us.

Based on Mr. Chovan's estimates of the total volume of lumber and profit he expected to receive under the contract, and his testimony as to the actual profit he received, we find that the defendant's lost profit on the trees which it was prevented from cutting and removing is $3,300.00.

*Conclusions of Law*

■ We have jurisdiction over this dispute because of diversity of citizenship between the parties and pursuant to 28 U.S.C. § 1332. Pennsylvania choice of law rules therefore apply. *Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As plaintiffs generally allege that the defendant tortiously cut and removed certain trees to which it was not entitled, we look to the Pennsylvania conflicts law in tort cases, whereby we must determine the jurisdiction with the most significant relationship to the cause of action. *See Conservation Council of Western Australia, Inc., et al. v. ALCOA*, 518 F.Supp. 270 (W.D.Pa.1981). Considering that this dispute centers around timber located in Pennsylvania and that the plaintiffs are residents of that same state, we conclude that Pennsylvania has the most significant relationship to this action; we will therefore look to Pennsylvania law in defining the rights and liabilities of the parties.

■ Applying Pennsylvania law, we next conclude that the contract for sale of timber between plaintiffs and defendant is a contract for the sale of goods governed by the Uniform Commercial Code ("UCC"). Section 2107(b) of the Pennsylvania UCC, 13 Pa. C.S. § 2107(b) (1984), provides, in pertinent part, that "[a] contract for the sale apart from the land ... of timber to be cut is a contract for the sale of goods within this division whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance." We find that this language specifically controls the nature of the timber sales contract between plaintiffs and the defendant.

We note that we would make the same conclusion under Pennsylvania law in effect prior to the present enactment of the UCC. Prior law would classify a "contract for the sale of standing timber, to be cut by the buyer, as one for the sale of goods if the parties intended the severance to be immediate." *See Havens v. Pearson*, 334 Pa. 570, 6 A.2d 84 (1939) (pre–UCC law); *Strause v. Berger*, 220 Pa. 367, 69 A. 818 (1908); *Edwards v. Glaske*, 165 Pa.Super. 108, 67 A.2d 798 (1949); *Kaiser v. Wolf*, 18

Pa.D. & C.3d 555, 32 U.S.C. Rep.Serv. (Callaghan) 740 (1981) (prior version of § 2107(b), which incorporates pre–UCC law). In *Havens*, the Pennsylvania Supreme Court said:

It has been stated in many of our cases that the contract to be a sale of personalty must intend an "immediate severance"; it would be more accurate to say that the real test is, considering the nature and extent of the land, the number of feet of merchantable timber and the time given for removal, whether the vendor intended the vendee to have an interest in the standing timber as land, or whether he contemplated a removal within a time reasonably necessary therefor, in which case the vendee would have a chattel interest.... [However,] the mere fact that the timber is to be removed within a definite time does not determine the character of the sale, as appears from Wilson v. Irvin, 1 Penny 203, where a contract for the sale of timber to be cut and removed in nine years was held to convey an interest in real estate.

334 Pa. at 573, 6 A.2d at 86 (footnote omitted). In the instant case, we find that the parties intended immediate severance of the timber, as evidenced by the defendant's commencement of the logging operation soon after the contract was executed (within three and one-half months), and by the contract's grant to the defendant of a right of ingress and egress to and from the timber for one year—what we believe to be a period of time reasonably necessary for the removal of the timber. Further evidence of such intent is the fact that a provision in the contract allowing the defendant to pay additional consideration for any additional time needed beyond one year was marked as being not applicable—the inference being that the parties never intended that the operation would last more than one year.

We conclude further that because the contract for sale of timber specified, with the exception of the timber along Whitestown Road, the size and species of the trees to be severed by the defendant and the areas where such severance was permitted,

identification occurred, effecting a present sale of the trees to the defendant. 13 Pa. C.S. § 2107(b). Consequently, the timber was "constructively severed," and title to the timber passed to the defendant when the contract was made. *See* 13 Pa. C.S. § 2106(a) (a "present sale" means a sale which is accomplished by the making of the contract; a "sale" consists in the passing of title from the seller to the buyer for a price.)

■ We note this passage of title because it, combined with the grant of a right of entry to Omega in the contract, creates an irrevocable license in favor of the defendant. The right of entry specified in the contract amounts to a license in that the defendant was given a "personal privilege to perform an act or series of acts on the land of [the plaintiffs]." *See Kovach v. General Telephone Company of Pennsylvania*, 340 Pa.Super. 144, 489 A.2d 883 (1985). When coupled with an interest in the timber, in this case title through constructive severance, this license became irrevocable. *See generally* 52 Am.Jur.2d *Logs and Timber* § 58 (1970) (a license to enter and remove timber will become coupled with an interest and therefore irrevocable when title to the trees as personalty vests in the licensee). *Cf. Western Union Telegraph Co. v. Pennsylvania Co.*, 129 F. 849 (3d Cir.1904) (a license coupled with a grant is irrevocable.)

■ The timber sales contract is valid and enforceable as both parties have manifested an intent to be bound by its terms—plaintiffs seek to enforce the agreements to provide 3,500 feet of white oak boards and to regrade the skid roads, while defendant seeks compensation for its interest in the trees remaining on plaintiffs' property which were sold under the contract—and because consideration exists on both sides—plaintiff has accepted $3,000 and 2,500 feet of boards and defendant has received, in exchange, title to the timber specified by the contract along with an irrevocable license to effect the removal of such timber. *See Channel Home Centers, Grace Retail v. Grossman*, 795 F.2d 291

(3d Cir.1986) (under Pennsylvania law, test for enforceability of agreement is whether both parties have manifested an intent to be bound by its terms, whether terms are sufficiently definite to be specifically enforceable and whether consideration exists).

■ We realize that the full consideration contemplated by the timber sales contract has not changed hands in that the plaintiffs only received 2,500 of the 3,500 feet of boards required by the contract and that the 2,500 feet received was not made of white oak, which Omega had agreed to provide. Also, Omega never received title, through identification, of any timber along Whitestown Road. However, neither party has raised any such failure of consideration as a defense to the contractual aspects of this dispute, either in the pleadings or at trial, and, as previously mentioned, both seek to enforce the agreement. As failure of consideration is an affirmative defense, *In re Beeruk*, 429 Pa. 415, 241 A.2d 755 (1968), we deem that any related question as to the enforceability of the contract has therefore been waived, *Western Kraft East, Inc. v. United Paperworkers International Union, Local 375*, 531 F.Supp. 666 (E.D.Pa.1982) (generally, failure to plead affirmative defense results in waiver of that defense and its exclusion from the case, citing Fed.R.Civ.P. 8(c)).

■ Despite the enforceability of the contract and its inherent grant of an irrevocable license to the defendant, though, we conclude that the plaintiffs have established by a preponderance of the evidence that Omega is liable for trespass and conversion. To the extent the defendant, by and through its subcontractor, Robert Taylor, severed trees which were not described by the contract, the defendant has committed *trespass quare clausum fregit* for injury to the plaintiffs' real estate. *See Shiffer v. Broadhead*, 126 Pa. 260, 17 A. 529 (1889) (where persons, having a right of entry on land for the purpose of cutting trees of a certain size, enter and cut others of a different size, they are liable in trespass for the unauthorized cutting). *Cf. Espy v. Butler Area Sewer Authority*, 63 Pa.Cmwlth. 95, 437 A.2d 1269 (1981) (work done by contractor outside of right-of-way exposes employer to liability for trespass, citing *Culver v. Commonwealth*, 346 Pa. 262, 29 A.2d 531 (1943)). To the extent such severance acts to change plaintiffs' title in this wrongfully cut timber from one in real estate to one in personalty and as such timber was then removed from plaintiffs' property, the defendant committed *trespass de bonis asportatis*—trespass for goods carried away. *See Crawford v. Forest Oil Co.*, 208 Pa. 5, 57 A. 47 (1904) (one who wrongfully converts property which has been wrongfully severed from the real estate of another, has committed a trespass against both realty and personal property); *Holshue v. Hoover*, 15 Northumb.L.J. 56 (1941) (one who removes coal from land of another is not merely a trespasser, but is guilty of carrying away and conversion of the coal as personalty in an action for trespass).

■ Finally, we conclude that the defendant is also liable for tortious conversion of such severed timber, as we have found defendant's subcontractor to have acted intentionally in cutting the trees not specified by the contact and removing ninety of these trees from plaintiffs' property. Conversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession; a person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel. *Baram v. Farugia*, 606 F.2d 42 (3d Cir. 1979) (defining the Pennsylvania common law of conversion, as based on the Restatement (Second) of Torts § 223 (1965)). In addition to the element of intent previously discussed, we find the remaining elements of conversion to be met here in that: (1) severance of the timber converts such timber to personalty, *cf. Baker v. Lewis*, 150 Pa. 251, 24 A. 616 (1892) (severed crops); *Holshue v. Hoover, supra;* (severed coal); and (2) the plaintiffs have been dispossessed of the timber wrongfully cut—they

have been deprived of the use and possession of such timber.

■ We note that some question may exist as to whether Omega ever interfered with the plaintiffs' right and title to the wrongfully cut timber, as opposed to interference by Robert Taylor, Omega's subcontractor on the logging operation. Mr. Chovan, in his testimony when called on cross-examination by plaintiffs' attorney, indicated that he never authorized the wrongful cutting of the white oak or other trees outside the contract and that he had no knowledge of such cutting, as he would have been aware of that quantity of white oak had it been processed in the defendant's saw mills. Such testimony indicates that Mr. Taylor may have been acting outside the scope of his authority as subcontractor and agent or employee of the defendant, thereby cutting off any liability on the part of Omega:

> Under Pennsylvania law, a master-servant relationship is established if the employer had the power to control and direct the conduct of the employee. A master is liable for the torts of his servant if the latter's tortious conduct was within the scope of his employment, i.e., conduct performed to further the business of the employer and not the servant's personal purposes.

*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1267 (3d Cir.1979).

We find, however, that any question and related defense on the part of Omega as to whether Omega is liable for Mr. Taylor's acts has also been waived. Lack of agency or of a master-servant relationship is an affirmative defense which the defendant should have pled. *See Zielinski v. Philadelphia Piers, Inc.*, 139 F.Supp. 408 (E.D. Pa. 1956) (lack of agency must be specifically and affirmatively denied; general denial of pleading which, in part, contains an allegation of agency in part is insufficient to create an issue as to the existence of agency). *Cf. Branding Iron Club v. Riggs*, 207 F.2d 720, 725 (10th Cir.1953) (defense of defendant president's lack of authority to bind defendant corporation is an affirmative defense which must be spe-

cifically pled). As the defendant here did not raise this affirmative defense, we find that it is estopped to deny responsibility for Mr. Taylor's acts, *see Western Kraft East, supra,* especially since the statute of limitations for any action by plaintiffs against Mr. Taylor has run, 41 Pa.C.S. § 5524 (two-year limitations period in action for trespass and conversion), and because the plaintiffs, as the result of defendant's failure to raise this defense, never received notice that they would need to join Mr. Taylor as an additional defendant in order to protect any action by plaintiffs against him, *see Zielinski, supra* (defendant equitably estopped to deny agency after time limitations had barred action against true employee).

We further acknowledge that an argument may be made that this issue was tried by the implied or express consent of the parties, thereby amending the pleadings pursuant to Fed.R.Civ.P. 15(b), so as to raise any lack of agency defense and avoid any estoppel or waiver. However, we will not allow any such amendment because of the aforementioned prejudice to the plaintiffs which would result. Omega is not without recourse, though, as it may pursue an action for indemnity or contribution against Taylor.

■ Implicit in our conclusion that the defendant is liable for trespass and conversion are denials of defendant's motions to exclude the testimony of George Cline and for involuntary dismissal. While it is true that under our Local Rules the testimony of an expert witness is inadmissible absent the filing of an expert's report, Mr. Cline's testimony is otherwise admissible as that of a lay witness having personal knowledge of the matters to which he testified:

> The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination. A lay witness in a federal court proceeding is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived. Entitled "Opinion

Testimony by Lay Witnesses," Rule 701 provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Fed.R.Evid. 701. The expression of opinions or inferences by a lay witness is permitted because of the qualification in Rule 701(a) that the factual predicate of the testimony be within the witness's perception. This qualification simply reflects a recognition of the limitation embodied in Fed.R.Evid. 602, that a witness must have "personal knowledge of the matter" in order to testify to it.

*Teen-Ed, Inc. v. Kimball International, Inc.*, 620 F.2d 399, 403 (3d Cir.1980) (citation and footnote omitted).

All of Mr. Cline's testimony related to matters of which he had personal knowledge. He personally inspected plaintiffs' property and identified those trees, not specified by the contract, which were cut and removed. He personally conducted the measurements which were used to calculate the volume of the trees wrongfully taken. He was also personally familiar with the formulae and tables used to make the volume determinations. As such, his personal knowledge was sufficient under Rule 602 to qualify him as a witness under Rule 701. *Cf. Teen-Ed*, at 403 (accountant's personal knowledge of appellant's balance sheets, data therein and accounting principles permitted him to testify as a lay witness about how lost profits could be calculated from such data).

Moreover, Mr. Cline was susceptible to specific cross-examination. *Id.* (opinion testimony of lay witness must be susceptible to specific cross-examination). Indeed, with Mr. Chovan—an experienced lumber operator—at his right hand, defendant's attorney questioned Mr. Cline as to how identification of the wrongfully cut trees was made, how measurements were conducted and the possibility of error in the calculation.

As a result, we find that plaintiffs have sustained their burden of proof as to loss and damages, based on the testimony of Mr. Cline and Mr. Chovan, and we will also deny defendant's motion for involuntary dismissal. Of course, as previously discussed in our findings of fact, to the extent plaintiffs have failed to introduce sufficient evidence of the wood quality of the eighty white oak trees or the value of the other ten trees wrongfully cut, plaintiffs have failed in certain aspects of their burden of proof, and we will base our determination of damages only upon 16,000 board-feet of No. 3 common white oak.

■ Where a conversion is intentional, as in this case, courts have generally granted a recovery designed to remove any gains by the tortfeasor; where timber is the subject matter of the conversion, recovery is usually measured by the finished value of the product at the time of the conversion, without deleting the costs of cutting, hauling or manufacturing. *See generally* 52 Am.Jr.2d *Logs and Timber* § 129 (1970). *Cf. Murdoch v. Biery*, 269 Pa. 577, 112 A. 772 (1921) (in action for trespass and conversion of lumber, which was made into mine props, measure of damages was fair market value of mine props). In this case, the testimony from Mr. Chovan indicated that the value of logged No. 3 common white oak was $100.00 per 1,000 board-feet in 1982. This then was the value to the defendant of the converted timber, without deleting the costs of cutting or hauling. Multiplying this damage rate by the total 16,000 board-feet of white oak wrongfully cut, we find the total amount of damages for the conversion to be $1,600.00. Accordingly, judgment in favor of plaintiffs will be entered in this amount.

■ We will not supplement this amount based on plaintiffs' claims for removal of treetops, as Omega had no contractual obligation in this regard. Nor will we find for plaintiffs in their claims for road repair and non-delivery of 3,500 feet of white oak boards, as we conclude that

plaintiffs breached the contract with the defendant, thereby relieving the defendant of these obligations. *United States v. Curtis T. Bedwell & Sons, Inc.*, 506 F.Supp. 1324, 1327 (E.D.Pa.1981) (a defaulting party to a contract cannot demand subsequent adherence to the terms of the contract by the other party); *Oak Ridge Const. Co. v. Tolley*, 351 Pa.Super. 32, 41, 504 A.2d 1343, 1348 (1985) (if a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract); 13 Pa. C.S. § 2711 (where seller fails to make delivery or repudiates, buyer may cancel contract).

We find that this breach occurred when the plaintiffs prevented the Omega from exercising its irrevocable right to enter plaintiffs' property and cut and remove the trees to which Omega has title. In effect, plaintiffs failed to perform their duty or obligation of delivering such timber to Omega by repudiating or terminating the right-of-way which plaintiffs had agreed to provide. *See Oak Ridge Const. Co.*, 351 Pa.Super. at 41, 504 A.2d at 1348 (nonperformance of a contractual duty is a breach, citing Restatement (Second) of Contracts § 250 (1981)). Plaintiffs' breach is material in that the defendant has been deprived of the value of the trees on plaintiffs' land to which it has title.

Plaintiffs have apparently argued that the defendant, instead, was the party who breached and that plaintiffs were therefore justified in terminating the contract. *See* Plaintiff's Answer to Counterclaim. ¶ 5 ("Paragraph 5 of the Counterclaim [alleging that plaintiffs wrongfully prevented Omega from proceeding under the contract] is denied for the reason that defendant or its agent unlawfully cut and removed 90 trees in violation of the contract...."). We disagree. We note first that this argument may have had merit had it been based on a breach due to failure of consideration—Omega's failure to deliver 3,500 feet of white oak boards; however this issue, as previously discussed, has been waived—plaintiffs have never pled or argued such a breach and defendant had no notice of this complaint until the time of

trial. As for any argument that Omega's trespass and conversion constitutes a breach of contract, we conclude that such tortious acts do not. These tortious acts do not amount to a failure on the part of Omega to perform any of its duties under the contract.

The plaintiffs have accepted the consideration tendered by Omega, waiving any objections related thereto, and title to the specified trees passed to Omega when it satisfied the obligations it owed to the plaintiffs prior to commencement of the logging operation. 13 Pa. C.S. § 2107(b). While the privileges provided to Omega on the right-of-way specified by the contract were abused, such misuse of the license to enter plaintiffs' property does not alter the defendant's title and right to the timber identified under the contract, nor does it provide plaintiffs with the right to revoke the license—as discussed above, this license was irrevocable because of Omega's title interest in the trees.

We understand the plaintiffs' anger in having their property tortiously converted. However, their rights in the wrongfully cut white oak are protected and have been indeed vindicated by common law remedies in trespass and conversion. We do not believe the plaintiffs are justified, in addition, in terminating the defendant's right to cut and remove the trees to which Omega has title. We acknowledge the plaintiffs' power to terminate defendant's right-of-entry, but we do not believe that such power also carries a right to terminate without consequence to the plaintiffs.

■ Consequently, we will enter judgment in favor of defendant on its counterclaim for breach of contract. As a result, the defendant, in addition to being relieved of its remaining contractual obligations—in particular skid road repair—is entitled to damages. *See* 13 Pa.C.S. § 2711(a) where seller fails to deliver or repudiates, buyer may cancel contract and also recover damages for nondelivery). This measure of damages includes lost profits. *See* 13 Pa. C.S. § 2713 (damages of buyer for nondelivery or repudiation include incidental and

consequential damages, as defined by 13 Pa.C.S. § 2715); *Kunststoffwerk Alfred Huber v. R.J. Dick, Inc.*, 621 F.2d 560 (3d Cir.1980) (consequential damages include lost profits); *Traynor v. Walters*, 342 F.Supp. 455 (M.D.Pa.1972) (under Pennsylvania law, buyer of Christmas trees was entitled to lost profits as consequential damages for breach by seller due to delivery of nonconforming trees); 52 Am.Jur.2d *Logs and Timber* § 125 (1970) (recognizing general rule that where the profits to be derived from some particular lumber transaction are capable of definite ascertainment, they may be employed in determining damages for breach of contract, and the profits derived by a lumberman for logging are not only proximate and direct, but also peculiarly certain owing to the facility and accuracy with which the cost of execution can be estimated).

We conclude further that the amount of damages in terms of lost profits attributable to plaintiffs' breach is $3,300.00. Plaintiffs have argued in their proposed conclusions of law that Mr. Chovan's testimony as to the amount of defendant's lost profits was too vague. We disagree. Mr. Chovan's testimony as to expected profits from the contract with plaintiffs and the lost profits resulting from plaintiffs' breach was reasonably certain, given his personal knowledge of the logging industry and the peculiar need for such certainty in his work for the defendant; the defendant's offers of compensation in exchange for logging rights in any operation were based on such estimates of expected profits. *See* 52 Am. Jur.2d *Logs and Timber* § 125, *supra* (profits to be derived from a particular lumber transaction are peculiarly certain owing to the facility and accuracy with which the cost of execution can be estimated). *Cf. Thompson v. W.P. Zartman Lumber Co.*, 55 Pa.Super. 302 (1913) (testimony of experienced lumberman admissible as to value of a stand of timber). Accordingly, the judgment to be entered in defendant's favor will be in the amount of $3,300.00.

An appropriate order will issue.

### ORDER

AND NOW, to-wit, this 24th day of September, 1987, for the reasons set forth in the accompanying opinion, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1) Defendant's motion to exclude the testimony of plaintiffs' witness George Cline be and hereby is DENIED;

2) Defendant's motion for involuntary dismissal be and hereby is DENIED;

3) Judgment be and hereby is entered in favor of the plaintiffs, William J.L. and Bonnie M. Lubecki, in the amount of $1,600.00; and

4) Judgment be and hereby is entered in favor of the defendant, Omega Logging, Inc., in the amount of $3,300.00

### MEMORANDUM ORDER

Presently before us is defendant Omega Logging, Inc.'s ("Omega") motion for new trial, filed pursuant to Fed.R.Civ.P. 59. Following a non-jury trial on April 1 and 2, 1987, we awarded $16,000 to plaintiffs William J.L. and Bonnie M. Lubecki, based on the legal conclusion that defendant had wrongfully converted 90 white oak trees belonging to the plaintiffs. We also awarded defendant Omega $3,300 on its counterclaim for breach of contract, concluding that a breach occurred when plaintiffs prohibited defendant from entering plaintiffs' property to retrieve timber to which defendant had become entitled under the contract for sale of timber between plaintiffs and defendant.

Omega requests a new trial on two grounds. First, it argues that we used an incorrect fair market value in determining plaintiffs' damages. Defendant correctly avers that in our Opinion, filed September 24, 1987, we entered judgment in favor of plaintiffs based on findings that 16,000 board-feet of No. 3 common white oak had been converted and that the fair market of such timber was $1.00 per board-foot at the time of conversion in 1982. *See* Opinion, pp. 505–506. Defendant is also correct when it asserts that the finding as to fair market value was based on the testimony

of defendant's president, Mr. Paul Chovan. *Id.* at 506. Defendant contends that this latter finding was incorrect, averring that it is the recollection of Mr. Chovan and defendant's counsel that Mr. Chovan testified to the fair market value of No. 3 common white oak being $100.00 per thousand board-feet in 1982, not $1.00 per board-foot. Defendant's Motion for New Trial, ¶ 4. Therefore, defendant asserts, the total value of the 16,000 board-feet of timber converted would be $1,600.00, not $16,000.00. *Id.* [16,000 board-feet × ($100.00/1000 board-feet) = $1,600.00].

Defendant also claims that it is entitled to a new trial because we entered judgment in favor of plaintiffs on tort theories which were not pled, alleged, or proven by plaintiffs. Defendant claims that plaintiffs came to court solely upon a contract theory and that had defendant been advised that plaintiffs were pursuing a tort theory, it would have prepared its case differently. Therefore, defendant contends, it was prejudiced.

In response, plaintiffs have essentially argued that our decision was fair, reasonable and just. No specific response is made to defendants' two grounds for new trial.

■ We disagree with defendant's second argument that tortious conduct was neither pled, alleged nor proved by plaintiffs. First, while plaintiffs' complaint does not specifically incorporate the terms "trespass" or "conversion," plaintiffs' basic claim is that defendant removed trees to which it was not entitled under the contract. Plaintiffs' Complaint, ¶ 5 ("defendant ... unlawfully cut and removed 90 trees which were not part of the agreement ..."). We find this to be a sufficient statement, given the liberal pleading rules in federal court, to provide defendant with notice that tort theories were being pursued. While the contract for sale of timber between the parties served to divide property rights in the timber on plaintiffs' property, defendant's interference with plaintiffs' property rights in the timber naturally invokes principles of tort, not contract, law.

Second, as to defendant's allegations concerning lack of proof, we note that defendant does not argue that our findings did not provide a sufficient basis for our legal conclusion that the defendant committed trespass and conversion. Nor does defendant identify any specific finding which was unsupported by proof. We find such lack of specificity understandable, though, as our review of our opinion reveals no absence of proof for our findings leading to the conclusion that defendant committed acts of trespass and conversion to plaintiffs.

Finally, with respect to defendant's claim of prejudice, we note that defendant's defense at trial was that the trees which plaintiffs alleged to have been cut by defendant were actually cut by another party in an earlier logging operation. This defense, if true, would have applied with equal force to defeat plaintiffs' tort claims, and we do not see what more defendant would have or could have done had it properly recognized plaintiffs' pleadings and allegations as raising tort claims. Without some explanation by defendant, we cannot credit its mere cry of prejudice. Accordingly, we find defendant's second argument provides no basis for a new trial.

■ However, we do find defendant's first argument to have merit. Our review of Mr. Chovan's testimony indicates that he, indeed, identified the fair market value of No. 3 common white oak as being $100.00 per 1000 board-feet. We have attached as "Appendix A" a transcript of the portion of Mr. Chovan's statement in which this statement is made. Consequently, defendant is correct in his assertion that the judgment in plaintiffs' favor should be $1,600.00, not $16,000.00. We choose not to grant a new trial based on this error, though, as it can be more easily corrected by exercising our related authority under Rule 59(e) to alter or amend a judgment. Accordingly, we will order that the judgment entered in the above-captioned in favor of plaintiffs be amended. [Editors Note: The Opinion of September 24, 1987 was amended in accord with this Order.]

514

## APPENDIX A

In The United States District Court, Western District of Pennsylvania.

William Lubecki

vs.

Omega Logging, Inc.

Pittsburgh, Pennsylvania

Before: Hon. MAURICE B. COHILL, Jr., Chief Judge

TRANSCRIPT OF EXCERPT OF TESTIMONY OF PAUL CHOVAN, WITNESS, ON APRIL 1, 1987

PAUL CHOVAN, WITNESS, SWORN

BY MR. COOK:

Q You would have no knowledge what was taken because you didn't go back in the woods with Bill?

A Yes, initially.

Q I mean after this whole mess, you didn't go back?

A That's correct. I did not.

Q If it's ever logged, what would be the board foot?

A There's different veneer log. You really wouldn't until it's on the ground. But the margin you can run, if you want me to quote a price, one dollar a foot to three and four dollars a board foot.

Q The average being $1.50. I'm not trying to put words in your mouth.

A On veneer log?

Q Yes, $1.50 to $2.00?

A Yes.

Q And number 3 common?

A I would say you are probably talking about the maximum would be, you know, 20 to 30 cents, because, for example, if you sell a number 3 log to a sawmill, the going price to sell a log is $90 per thousand board feet.

Q That's how you buy it?

A No. If I was selling the log. Looking from a logger's standpoint, sell it for $90 for a thousand board feet. The tops, you might find somebody that gave you a hun-

dred a thousand, but larger mills are paying $90 right now. You're cutting and trucking costs involved in that right now from my subcontractors, I pay $110 per thousand. Everytime they take a number 3 out of the woods, from where I sit, I would be losing $20 per thousand board foot of log.

Q Going by 1982 prices?

A Yes. I paid $100 a thousand to cut and skid the timber.

Q That's number 3?

A That's correct.

Q And what other grade would have been dealt with in general in 1982?

A We would deal with all logs.

Q White oak, I mean.

A I'm going to quote a price, but, you know, I can't say I am correct on that. But after the lumber—after the log was made into lumber—is that it?

Q I was thinking about the log coming in and what you make a profit on the other end.

I certify that the foregoing is an accurate transcript of excerpt of testimony in the captioned case.