504 A.2d 1343

**OAK RIDGE CONSTRUCTION COMPANY**

v.

**Roy R. TOLLEY and Aureline Tolley, his wife, Appellants.**

Argued April 3, 1985.

Decided Dec. 27, 1985.

Reargument Denied March 3, 1986.

34

Brenda M. Flock, Philadelphia, for appellants.

Peter J. O'Brien, Mount Pocono, for appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's judgment awarding appellee, Oak Ridge Construction Co. (Oak Ridge), damages for appellants', the Tolleys', anticipatory breach of a construction contract. The Tolleys contend on appeal that the lower court erred in (1) finding that they, rather than Oak Ridge, had breached the contract; (2) striking testimony as to the unreasonableness of drilling an 800 foot well; and (3) awarding damages to Oak Ridge. We affirm in part, reverse in part, and remand for further proceedings.

In June, 1982, the Tolleys and Oak Ridge entered into a contract pursuant to which Oak Ridge agreed to construct a residence on the Tolleys' property for $64,500.[1] The Tolleys provided Oak Ridge with specifications, which were incorporated into the contract, and a plot plan. The specifications contained, *inter alia*, the following provision:

20. *Water Supply*

Drill well 150' deep with 40' of 6" casing, ⅓ H.P. submersible pump and a 21 gallon storage tank. Should well be more than 150' a charge of $6.50 per ft. will be made. Should casing be over 40' a charge of $7.00 per ft. will be made. Should well depth require a deep lift pump, extra cost to be borne by owner. Well depth over 100' *may* require a larger pump.

(Emphasis in original). Before drilling began, Oak Ridge warned the Tolleys that the well might be very deep because other wells in the area had been drilled to depths of

---

1. The contract provided that, after the Tolleys' payment of a $500 deposit, the remainder of the contract price was to be paid as follows: 10% when the foundation was laid; 30% when the roof and walls were erected and the house enclosed; 30% when rough plumbing, wiring, and wall finish were completed; and 30% when the house was ready for occupancy. *See* Defendants' Exhibit No. 4 at 1.

760 and 975 feet. Oak Ridge then drilled the well at a place indicated by one of the Tolleys' employees after referring to the plot plan. It was completed on August 24, 1982, after being drilled to a depth of 800 feet. On August 27, Oak Ridge sent the Tolleys an invoice including charges of $4225 for the extra 650 feet of drilling and $616 for an extra 88 feet of casing, amounts computed using the rates specified in the contract. On September 2, Mr. Tolley wrote Oak Ridge stating that those charges were "in dispute or disagreement. All work under item 20 (Water Supply) ... are [sic] to cease pending satisfactory resolution or settlement under item 13 (Arbitration) of our construction agreement."[2] Oak Ridge replied on September 7, stating that it believed that the Tolleys had breached the contract by refusing to pay the invoice and that it was giving them ten days notice under paragraph seven of the contract (Termination by Contractor), which provides as follows:

> Should owner in any manner, by act or omission, violate or breach any covenant herein, then CONTRACTOR may, at his option, terminate this agreement, upon ten (10) days written notice to OWNER of any such violation or breach. Upon failure of OWNER to correct the same within the ten (10) day period, then, and in such event of termination, CONTRACTOR shall be entitled to receive payment for all unpaid materials, labor, and work of sub-contractors, for work and materials completed, installed, delivered on site, and ordered but undelivered and not installed, plus 20% of the total contract price as liquidated damages. In the event CONTRACTOR shall stop work hereunder, he shall in no way be liable for any loss or damage whatsoever as a result thereof.

Oak Ridge also notified the Tolleys that it was stopping work on the house and named an arbitrator in response to Mr. Tolley's letter and pursuant to paragraph thirteen of the contract.[3] On September 10, Mr. Tolley responded,

---

2. At the time that the instant dispute arose, the Tolleys had paid Oak Ridge 70% of the contract price pursuant to the schedule outlined above. *See supra* note 1.

3. Paragraph 13 of the contract provides as follows:

stating, "arbitration under our contract is not advised at this time."

■ Based upon these facts, the court below found that the Tolleys had committed an anticipatory breach of the contract justifying Oak Ridge's termination. *See* Lower Court Opinion dated October 1, 1984 at 11. We disagree.

"An anticipatory breach of a contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach. See 4 *Corbin on Contracts* § 959, p. 852–856 (1951)."

*Jonnet Development Corp. v. Dietrich Industries, Inc.*, 316 Pa. Superior Ct. 533, 543, 463 A.2d 1026, 1031 (1983), *quoting Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1014 (E.D.Pa.1975), *aff'd* 530 F.2d 963, 966 (3d Cir.1976). *See also McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 433, 185 A. 198, 200 (1936); Restatement (Second) of Contracts § 250 (1981) [hereinafter cited as Restatement].

In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. Mere expression of doubt as to his willingness or ability to perform is not enough to constitute a repudiation, although such an expression may give an obligee reasonable grounds to believe that the obligor will commit a

The parties' agree, in the event of any dispute or disagreement hereafter arising between them under this contract, or any other matter in connection herewith, the same shall be referred to three arbitrators, one to be selected by OWNER, one to be selected by CONTRACTOR, and a third to be selected by appointee of OWNER and CONTRACTOR, and the decision of the majority shall be final and binding upon the parties, hereto. All appointments hereunder shall be made within ten (10) days after notice from either party that a dispute exists. If for any reason said appointments are not made within the time allowed, then either party shall have the right to their remedies at law. The cost of said arbitration (herein defined as the record costs and the fees of arbitrators) shall be equally borne between OWNER and CONTRACTOR, each to pay his own expenses and attorney's fees.

serious breach and may *ultimately* result in a repudiation.... However, language that under a fair reading "amounts to a statement of intention not to perform except on conditions which go beyond the contract" constitutes a repudiation. Comment 2 to Uniform Commercial Code § 2–610.

Restatement, *supra* § 250 comment b (emphasis added).

In the instant case, we cannot say that the language in Mr. Tolley's letter constituted a "definite and unconditional repudiation" of the contract which "amounts to a statement of intention not to perform except on conditions which go beyond the contract." The letter merely stated that the charges for work performed under item twenty of the contract's specifications were "in dispute or disagreement" and requested resolution of the dispute under the arbitration clause of the contract. The letter did not contain an unequivocal refusal to pay the drilling charges or a repudiation of the entire contract. Thus, when Oak Ridge gave the Tolleys ten days notice that it was terminating the contract, the Tolleys had not committed an anticipatory breach.

 We must therefore turn to the Tolleys' contention that Oak Ridge breached the contract either by (1) drilling the well to the allegedly unreasonable depth of 800 feet or (2) stopping work on the house.[4] In connection with their first allegation, the Tolleys argue that the lower court erred

---

4. The Tolleys also argue that Oak Ridge breached the contract by drilling a well in excess of 150 feet without written authorization from them. In support of this contention they cite paragraph six of the contract, which provides:

No alteration (and/or extras) shall be made in the work, except upon written agreement of the OWNER and the CONTRACTOR, and the amount to be paid by the OWNER by virtue of such alterations is to be stated in said agreement, which shall be a separate contract and shall in no way impair the within agreement. Payment for said alterations (and/or extras) shall be made prior to the commencement of work on such alterations and/or extras.

We find this contention meritless. The drilling done beyond 150 feet was not an "extra" or alteration but a contingency for which specific provision was made in item 20 of the contract's specifications. Item 20 does not require the Tolleys' authorization for drilling in excess of 150 feet, and any excess charges thereunder are not payable in accordance with the prepayment provision of paragraph six.

in striking testimony concerning the reasonableness of drilling a well to that depth. We disagree.

Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Lewis v. Mellor*, 259 Pa.Superior Ct. 509, 393 A.2d 941 (1978). The court may exclude evidence that is irrelevant or merely cumulative of other evidence. *Id.*

*Burch v. Sears, Roebuck & Co.*, 320 Pa.Superior Ct. 444, 455, 467 A.2d 615, 621 (1983). At trial, the Tolleys sought to introduce testimony to show that it was unreasonable for Oak Ridge to drill an 800 foot well because (1) most wells in the area were not that deep and (2) water found in wells of that depth may be of poor quality. However, item twenty of the contract specifications required Oak Ridge to drill a well 150 feet deep, unless a deeper well was necessary to ensure an adequate water supply, and the well location was established by the plot plan provided by the Tolleys. Furthermore, Oak Ridge warned the Tolleys that other wells in the area had been drilled to depths as great as 975 feet and that a deep well might be necessary to achieve an adequate water supply. Under these circumstances, where the contract required Oak Ridge to dig a well at the site specified by the Tolleys and they had been warned that a deep well might result, we find that evidence concerning the depth of other wells in the area was irrelevant and the lower court did not abuse its discretion in excluding it. In addition,

it is well settled law that a contract to dig a well presents a different question from that presented in contracts by manufacturers or builders.... While there is an implied understanding in the contracts of manufacturers and builders that the completed subject of the contract shall be reasonably suitable for its purpose, this implication is based upon the supposed superior knowledge of the manufacturer or builder. However, since the quantity, if any, and the quality of water a well will furnish is unknown to both parties, there is no implication, if the contract is silent in these respects, that the well when completed will

be a producing well; or, if it is productive, there is no implication as to the quantity or quality of water to be obtained therefrom. 55 A.L.R. 1550(f).

*Ferguson v. Burge,* 194 Pa.Superior Ct. 202, 205–06, 166 A.2d 288, 290 (1960). In the instant case, the contract was silent as to the quality of the water to be produced. We therefore find that the lower court did not abuse its discretion in striking testimony concerning the quality of the water in this well and others of its depth when such quality was not properly at issue.

■■■■ The Tolleys also allege that Oak Ridge breached the contract by stopping work on the house on September 7. "When performance of a duty under a contract was due, any nonperformance is a breach." Restatement *supra* § 235(2). If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract. *See Greentree Borough v. Tortorete,* 205 Pa.Superior Ct. 532, 535, 211 A.2d 76, 78 (1965); Restatement, *supra* § 237. In determining whether a failure of performance is material, we consider the following factors:

a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of that benefit of which he will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

Restatement, *supra,* § 241.

■■■■ Here, having found that the Tolleys did not anticipatorily breach the contract, we must find that Oak Ridge

breached it by stopping work on the house on September 7 without justification.[5] We must therefore consider whether that breach was material in light of the factors enumerated above. The Tolleys, as the injured party, were deprived of the expected benefits of their contract (*i.e.,* receiving a completed home) by Oak Ridge's work stoppage, and could be adequately compensated for that deprivation by an award of damages. Furthermore, Oak Ridge's letter of September 7 gave no indication that the company would cure its failure to perform, and, in fact, the record indicates that Oak Ridge never did so act. Of course, a finding of material breach will result in forfeiture for Oak Ridge (*i.e.,* the Tolleys will be discharged from all liability on the contract), however Oak Ridge will be entitled to restitution for any benefit conferred upon the Tolleys by part performance or reliance (*i.e.,* the cost of digging the well) in excess of the loss Oak Ridge caused by its own breach. *See* Restatement, *supra,* §§ 241 comment d, 374(1). We note that the record contains no evidence concerning whether Oak Ridge's conduct "comports with standards of good faith and fair dealing." Under these circumstances, we find that Oak Ridge's breach constituted a material failure of performance thereby discharging the Tolleys from all liability under the contract.

Finally, the Tolleys contend that the lower court erred in awarding damages to Oak Ridge for the Tolleys' anticipatory breach of the contract. In view of our holding that Oak Ridge, rather than the Tolleys, breached the contract, we agree and remand the case to the lower court for a determination of damages.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.

5. While the Tolleys' *subsequent* refusal to arbitrate the dispute on September 10 may have given Oak Ridge the right to resort to the termination clause, *see* paragraph thirteen *supra* note 3, that refusal cannot be relied upon to justify Oak Ridge's actions on September 7.