SEAWAY PAINTING, INC., and
Cornell & Company, Inc.

v.

D.L. SMITH COMPANY.

In re Cornell & Company, Inc.

No. Civ.A. 99–993.
Bankruptcy No. 96–31650.
Adversary No. 98–374.

United States District Court,
E.D. Pennsylvania.

Dec. 21, 1999.

Albert A. Ciardi, III, Ciardi, Maschmeyer & Karalis, Philadelphia, PA, for Cornell & Company, Inc., debtor/plaintiff.

Paul A. Logan, Michael J. Maransky, Powell, Trachtman, Logan, Carrle, Bowman and Lombardo, King of Prussia, PA, for Seaway Painting, Inc., appellant.

Paul A. Logan, Powell, Trachtman, Logan, Carrle, Bowman and Lombardo, King of Prussia, PA, for Seaway Painting, Inc., defendant.

Robert V. Dell'osa, Cozen and O'Connor, Philadelphia, PA, for Delbert L. Smith Company, Inc., defendant.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA, for Frederic Baker, trustee pro se.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the appeal of appellants Seaway Painting, Inc. ("Seaway") and Cornell and Company, Inc. ("Cornell") and cross-appeal of appellee and cross-appellant D.L. Smith Company ("D.L. Smith") from a final judgment in a core proceeding in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court").[1] For the reasons set forth below, the court will remand the action back to the Bankruptcy Court for proceedings consistent with the court's Memorandum.

## I. BACKGROUND

Debtor Cornell is a construction company. Between 1991 and 1993, the Southeastern Pennsylvania Transportation Authority ("SEPTA") awarded Cornell four contracts as the general contractor to perform rehabilitation work on the Market–Frankford Elevated Railroad (the "El") in Philadelphia.[2] The nature of this appeal concerns only one of those contracts, known as Contract CL–2D. In March 1994, Cornell subcontracted with Seaway for structural painting work on, among other things, the CL–2D Project (the "Project"). In September 1994, Seaway assigned its rights in connection with the CL–2D contract to D.L. Smith.

D.L. Smith began work on the Project in September 1994 and worked continuously until late November 1994, when SEPTA imposed its annual moratorium through Christmas in order for shoppers to fully utilize the El. Following the end of SEPTA's moratorium, D.L. Smith did not remobilize to return to the Project until March 1995, due to weather conditions which restricted D.L. Smith's use of paint and primer.

In 1995, the Project experienced several delays associated with design errors, OSHA's adoption of new "fall protection" standards, changes in federal lead-abatement standards, extra work and SEPTA's changes in acceptance of work criteria. In addition to these delays, Cornell fell behind in its payments to D.L. Smith. Work on the project in 1995 ceased in late November 1995, due to SEPTA's annual moratorium.

By March 1996, Cornell became current on its payments to D.L. Smith, paying all amounts due except for retainage.[3] In August 1996, Cornell requested D.L. Smith to return to work so that the Project could be completed before the November 1996 SEPTA moratorium. D.L. Smith refused to return to the Project in 1996, citing several reasons in support of its position. In fact, D.L. Smith did return to work in October 1996, but completed only certain punch lists[4] completed by SEPTA. On October 3, 1996, D.L. Smith demanded a reduction in retainage withheld by Cornell. Cornell refused to reduce D.L. Smith's retainage, stating that D.L. Smith had not completed enough work on the Project to warrant such reduction. On November 13, 1996, D.L. Smith permanently departed from the Project. Subsequently, Cornell hired Seaway to complete the work. Seaway did in fact complete the work at a cost of $307,000.00.

---

1. This court has jurisdiction over the instant bankruptcy appeal pursuant to 28 U.S.C. § 158(a).

2. A fifth contract was awarded to a joint venture between Cornell and another contractor, Buckley & Company.

3. Generally, retainage is an amount of payment on a contract which is withheld by a contractor until the contractor is confident that the work is complete, so that if there is a problem, the contractor can use the money withheld to complete the work. (Tr. 11/19/98 at 68.) Generally, when the work is complete, the final retainage is paid. *Id.*

4. Punch lists inventory types of jobs and work that need to be completed.

On December 2, 1997, Cornell filed for voluntary reorganization under Chapter 11 of the United States Bankruptcy Code. On February 4, 1997, Seaway filed a general unsecured claim against Cornell for $342,-053.00, which was amended to $571,026.08 on February 18, 1998. On May 14, 1998, D.L. Smith filed a general unsecured claim against Cornell for $80,374.83.

Prior to trial, Cornell and Seaway settled their differences. Under the settlement, Cornell withdrew its objection to Seaway's proof of claim and, under Cornell's reorganization plan, Seaway elected to be paid $80,525.85 out of its unsecured claim for $307,446.03 relating to the CL–2D Project. Also under the settlement, Cornell agreed to continue its counterclaim against D.L. Smith and to assign to Seaway its rights against D.L. Smith up to the amount of the remaining balance of Seaway's $307,446.03 claim against Cornell. Consequently, out of any recovery Cornell might gain against D.L. Smith, the first $226,920.18 would go to Seaway, with any remaining balance to be paid to Cornell.

Thus, a trial proceeded in the United States Bankruptcy Court for the Eastern District of Pennsylvania on November 18, 19, 20 and 30, 1998 and consisted of D.L. Smith opposing Cornell and Seaway. The Bankruptcy Court found that D.L. Smith breached its subcontract agreement with Cornell and awarded damages to Cornell in the amount of $1,160.00. Initially, the Bankruptcy Court found that D.L. Smith's

proof of claim for unreleased retainage must be disallowed because D.L. Smith failed to complete its contractual obligations. Next, the Bankruptcy Court held that, based on the prime contract and subcontract, $842,535.00 in approved progress payments made from Cornell to D.L. Smith constituted final acceptance of the work.[5] The Bankruptcy Court next denied Cornell's claim for delay damages caused by D.L. Smith's breach. The Bankruptcy Court also denied Cornell's claims for back-charges against D.L. Smith.[6] Last, the Bankruptcy Court calculated $1,160.00 as the amount of damages to be awarded to Cornell based on D.L. Smith's breach of the subcontract.

## II. *LEGAL STANDARD*

■ A district court's appellate review of a bankruptcy court's decision is two-fold. First, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994); Fed. R.Bankr.P. 8013. The clearly erroneous standard is stringent: " '[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the factfinder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.' " *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir.

---

**5.** Having decided that D.L. Smith could not recover against Cornell, the Bankruptcy Court proceeded to determine whether Cornell and Seaway could recover any amount from D.L. Smith. As an initial inquiry, the Bankruptcy Court addressed the issue of whether contractually approved pay request forms submitted on account of work actually performed by D.L. Smith constituted final acceptance of the work in question. The Bankruptcy Court held that, based on the prime contract and subcontract, $842,535.00 in approved progress payments made from Cornell to D.L. Smith constituted final acceptance of the work. Thus, the Bankruptcy Court reject-

ed the notion that Seaway or Cornell could recover any damages from this amount based on arguments that such work was defective or incomplete.

**6.** The Bankruptcy Court found that in accordance with the contract, Cornell was to provide two written notices to D.L. Smith before back-charges could be allowed. Because Cornell failed to follow this procedure with respect to any of the back-charges it requested, the Bankruptcy Court denied Cornell's claim.

1995) (quoting *Hoots v. Pennsylvania,* 703 F.2d 722, 725 (3d Cir.1983)). "Due regard" must be given to the bankruptcy court's opportunity to judge first-hand the credibility of witnesses. *See id.;* Fed. R.Bankr.P. 8013. Second, the bankruptcy court's conclusions of law are reviewed de novo. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988); *In re Allentown Moving and Storage,* 214 B.R. 761, 763 (E.D.Pa.1997). With regard to mixed questions of law and fact, the district court must break down each component and apply the appropriate standard to each one. *In re Allentown,* 214 B.R. at 763.

## III. *DISCUSSION*

Cornell and D.L. Smith appeal the findings of the Bankruptcy Court. D.L. Smith challenges the Bankruptcy Court's finding that it breached its contractual duties. Both Cornell and D.L. Smith challenge the Bankruptcy Court's calculation of damages. Cornell also challenges the Bankruptcy Court's finding that it was not entitled to delay damages against D.L. Smith. The court will review each challenge separately.

### A. *D.L. Smith's Breach*

 Under Pennsylvania law, "the paramount goal of contract interpretation is to ascertain and give effect to the parties intent." *Polito v. Polito,* 440 Pa.Super. 328, 655 A.2d 587, 589 (1995). If the language of a contract is clear and unambiguous, the intent of the parties is to be derived only from the express language of the contract. *Gene & Harvey Builders, Inc. v. Pennsylvania Mfr's Ass'n Inc.,* 512 Pa. 420, 517 A.2d 910, 913 (1986).

 "When performance of a duty under a contract was due, any nonperformance is a breach." *Oak Ridge Constr. Co. v. Tolley,* 351 Pa.Super. 32, 504 A.2d 1343, 1348 (1985) (citation omitted). If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract. *See Greentree Borough v. Tortorete,* 205 Pa.Super. 532, 211 A.2d 76, 78 (1965). In determining whether a failure of performance is material, the court considers the following factors:

a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of that benefit of which he will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Oak Ridge Constr. Co.,* 504 A.2d at 1348 (quotation omitted). Whether a breach of contract constitutes a material breach is a question of fact. *Forest City Grant Liberty Assocs. v. Genro II, Inc.,* 438 Pa.Super. 553, 652 A.2d 948, 951 (1995).

The Bankruptcy court found a breach occurred and that D.L. Smith had not completed all of the work required under the subcontract. Ample evidence in the record supports this finding. The CL–2D subcontract required D.L. Smith to: (1) clean, prime and final coat all required steel at Berks Station; (2) final coat all new steel and drain pipes; and (3) perform repair work on 2000 square feet of "stringers." In fact, evidence at trial in the Bankruptcy Court confirmed that D.L.

Smith failed to fully complete the required work under the subcontract. (Bankr.Ct. Opinion at 16–17.) It is undisputed that D.L. Smith departed from the project even though required work under the subcontract remained incomplete. (Bankr.Ct. Opinion at 17.) Thus, the issue here is whether such breach is material.

■ The Bankruptcy Court found that D.L. Smith's abandonment of the Project in November 1996 conclusively established its material breach of the subcontract. *See In re Fordson Eng'g Corp.*, 25 B.R. 506, 510 (Bankr.E.D.Mich.1982) (stating that "[d]elay in making payment where the amount of work done is disputed . . . is not on that basis alone a breach of contract," and that "breach occurs where a contractor unilaterally . . . leaves a job site without completing its contractual duties"); *In re Northup–Johnson, Inc.*, 15 B.R. 767, 770 (Bankr.D.Md.1981) (stating same). This finding was based on the Bankruptcy Court's conclusion that D.L. Smith had completed only 86.4% of the work required under the subcontract.

However, it is unclear whether the Bankruptcy Court properly calculated the percentage of work completed by D.L. Smith. The Bankruptcy Court's determination was based on dividing the amount actually paid to D.L. Smith, $842,535.00, by the base contract price, $975,000, which equaled 86.4%. However, this figure alone is not necessarily representative of the actual amount of work completed on the project. Some of the unpaid portion of the contract price constituted retainage, an amount on the contract which may have been earned, although not yet paid. Because the court is unclear as to whether the Bankruptcy Court's calculation took retainage into account, its 86.4% complete figure might not be entirely representative of the amount of work actually done by D.L. Smith on the Project. Thus, the court will remand this action back to the

Bankruptcy Court for a further determination of the actual amount of work completed on the Project. Should the Bankruptcy Court calculate this number based on a dollar figure in relation to the base price of the contract, the Bankruptcy Court should figure into that dollar amount the retainage which, although withheld by Cornell, nevertheless represents an amount of work earned and completed by D.L. Smith. On remand, should the Bankruptcy Court's determination of the work completed be higher than its current finding, it should also reconsider whether D.L. Smith's breach was material.

On appeal, D.L. Smith argues that Cornell's refusal to pay retainage to D.L. Smith constituted a material breach of the subcontract between them and thus, that it was justified in leaving the project in November 1996. D.L. Smith asserts that its retainage was supposed to have been reduced from 10% to 5% once its work was 50% complete. Because Cornell failed to follow through on its promise, D.L. Smith contends that it was justified in leaving the Project.

The Bankruptcy Court held that the retainage withheld by Cornell was not yet due to D.L. Smith. This finding is supported by evidence in the record. D.L. Smith's former vice president in the painting department, Lawrence Szemanski, testified that he recalled a conversation wherein Cornell agreed to reduce D.L. Smith's retainage from 10% to 5% once the work was 50% complete. However, no further evidence of such an agreement is apparent from the record. (Tr. 11/30/99 at 37–38.) Other evidence showed that D.L. Smith had not completed enough work to warrant such a reduction in retainage. (Tr. 11/18/98 at 56–57; Pls.' Ex. 20.) Thus, the Bankruptcy Court's finding that the retainage withheld by Cornell was not due to D.L. Smith was not clearly erroneous. However, to the extent that any reconsideration of the amount of work per-

formed by D.L. Smith warrants it, the Bankruptcy Court should also reconsider D.L. Smith's assertion that it was entitled to a release of retainage.

## B. *Calculation of Damages*

■ Where a breach of contract results in one party failing to perform a construction contract, the measure of damages is the cost of completing the work minus the unpaid part of the contract price. *Oelschlegel v. Mutual Real Estate Inv. Trust*, 429 Pa.Super. 594, 633 A.2d 181, 184 (1993). The Bankruptcy Court determined the unpaid part of the contract price was $127,465.00 ($975,000.00 base contract price minus the sum of $842,535.00 amount actually paid to D.L. Smith and $5,000.00 deductible for general liability claim)[7]. In determining the cost of completion, the Bankruptcy Court did not accept Cornell's assertion that the cost to complete the work was $307,000.00:

> we are unable to accept the $307,000 figure payable by the Debtor to Seaway to complete the job as the cost to complete the job as contracted. While we have been presented with no evidence that Seaway's charges were not reasonable for the work that Seaway performed, we agree with the Defendant that Seaway's charges were inflated beyond those properly chargeable to the Defendant due to the delay between the Defendant's performance of most of the work and Seaway's completion of the balance of the work, and the extra scrutiny which PTC and SEPTA imposed on Seaway's work as contrasting with that performed by the Defendant.

Instead, the court arrived at its own calculation of the cost of completion. The Bankruptcy court noted that Cornell's $307,000.00 figure was based on its assertion that 30% of the work remained incomplete before Seaway arrived to finish the Project. On the other hand, the Bankruptcy Court determined that only 13.6% of the work remained unfinished. The Bankruptcy Court based its number on a calculation of the amount paid to D.L. Smith ($842,535.00) divided by the base contract price ($975,000.00), which equaled 86.4% of the work complete and thus, 13.6% of the work as incomplete.

To determine the cost of completion, the Bankruptcy Court accepted Cornell's assertion that $307,000.00 was a reasonable cost to complete the work if 30% of it were incomplete. Then, the Bankruptcy Court calculated, based on that assumption, the cost of completion if only 13.6% of the work remained, arriving at a cost of $139,160.00 (30% incomplete according to Cornell / $307,000 cost to complete according to Cornell = 13.6% incomplete according to Bankruptcy Court / X cost to complete according to Bankruptcy Court; X = $139,160.00).

In addition, the Bankruptcy Court determined that an amount of $10,535.00 was an outstanding balance due to D.L. Smith. Thus, in arriving at its damage calculation, the Bankruptcy Court subtracted the unpaid part of the contract price ($127,465.00) and the outstanding balance due to D.L. Smith ($10,535.00) from the cost of completion of the contract ($139,160.00), for a total of $1,160.00.

Cornell's position on appeal is that it is entitled to $179,981.03 in damages from D.L. Smith as a result of its breach of the subcontract. Cornell asserts that Seaway's costs to complete the balance of the contract were $307,446.03. Cornell argues this amount accurately reflects costs for completion as well as costs to correct work which had been performed by D.L. Smith. Thus, under Cornell's calculation, it is entitled to $179,981.03 in contract damages

---

**7.** Due to an accident during the Project, D.L. Smith was assessed with a $5,000.00 general liability claim deductible, thereby reducing the remaining contract balance by $5,000.00.

($307,446.03 cost of completion minus $127,465.00 equals $179,981.03 contract damages).

D.L. Smith's position on appeal is that it is entitled to $97,067 .00. D.L. Smith asserts that it completed 96% of the work on the contract and that the Bankruptcy Court's calculations were flawed by its failure to take into account retainage held by Cornell when it determined the amount of work completed by D.L. Smith. Specifically, D.L. Smith asserts that the correct way to measure the amount of work done is to add the amount paid to D.L. Smith ($842,535.00) and the retainage held by Cornell ($93,615.00) and divide that sum ($936,150.00) by the base contract price ($975,000.00) to arrive at the proper percentage of work completed by D.L. Smith (96%).

To determine the cost of completion, D.L. Smith also accepts, as did the Bankruptcy Court, Cornell's assertion that $307,000.00 was a reasonable cost to complete the work if 30% of it were incomplete. Then, D.L. Smith calculates, based on that assumption, the cost of completion if only 4% of the work remained, arriving at a cost of $40,933.00 (30% incomplete according to Cornell / $307,000 cost to complete according to Cornell = 4% incomplete according to D.L. Smith / X cost to complete according to D.L. Smith; X = $40,933.00).

In addition, D.L. Smith accepts the Bankruptcy Court determination that an amount of $10,535.00 was an outstanding balance due to D.L. Smith. Thus, in arriving at its damage calculation, the D.L. Smith subtracted the unpaid part of the contract price ($127,465.00) and the outstanding balance due to D.L. Smith ($10,535.00) from the cost of completion of the contract ($40.933.00), for a total of $97,067.00 payable to D.L. Smith.

Generally, the court does not necessarily disagree with the Bankruptcy Court's rejection of Cornell's position that 30% of the work remained incomplete, as well as its rejection of D.L. Smith's position that 4% of the work remained incomplete. In addition, the court agrees with the Bankruptcy Court that "there is no precise means to adjust Seaway's $307,000 figure to the costs for completion of the contract and thus to assure complete accuracy in any such calculation." However, the court will remand this action back to the Bankruptcy Court for further findings regarding certain numbers that figured into the Bankruptcy Court's calculation.

The Bankruptcy Court's calculation of damages was based on its finding that 86.4% of the work under the Project had been completed by D.L. Smith. However, because it is unclear whether the Bankruptcy Court properly considered retainage in calculating the percentage of work completed by D.L. Smith, the court will remand this action back to the Bankruptcy Court for a further determination of the actual amount of work completed on the Project.

The court notes that it does not quarrel with the method that the Bankruptcy Court used in determining the cost of completion on the Project. On remand, the Bankruptcy Court may use that formula again, or use another method of its choosing.[8] The court will remand this action for a re-determination of damages because it is unsure whether the Bankruptcy Court properly took into account any retainage withheld by Cornell which represented an amount of work that was complete, but not yet paid.

In its calculation of damages, the Bankruptcy Court also reduced Cornell's recovery by $10,535.00, for "Outstanding Bal-

---

**8.** One alternative that the Bankruptcy Court may consider on remand is to parse out which costs related to Seaway's $307,000.00 bill are attributable to completing work required under the contract.

ance to be Paid" to D.L. Smith. The Bankruptcy Court found that while "payments to the [D.L. Smith] amounted to $842,535.00," the "amounts billed by [D.L. Smith] amounted to $852,535.00." (Bankr. Ct. Opinion at 40.) The $10,000.00 difference appears to represent some retainage withheld by Cornell.

Two problems exist with this number, which figured into the Bankruptcy Court's calculation of damages. First, it appears that the difference between the amounts billed by D.L. Smith and the amounts paid to D.L. Smith is only $10,000.00 and not $10,535.00. Second, and more important, it appears that the Bankruptcy Court's calculation "double counts" the $10,535.00. The Bankruptcy Court calculated that $127,465.00 was the unpaid part of the contract price. It appears that the "$10,-535.00 Outstanding Balance" owed to D.L. Smith makes up a part of the $127,565.00 unpaid part of the contract price and thus, should not have been separately deducted from the cost of completion of the Project.[9] Thus, the court will also remand this action back to the Bankruptcy Court for a further determination regarding its $10,-535.00 "Outstanding Balance" figure.

### C. Delay Damages

 Where a contractor is delayed by another party in the timely performance of his contract, the contractor may recover damages for the costs associated with that delay. See Commonwealth, Dep't of Transp. v. W.P. Dickerson & Son, Inc., 42 Pa.Cmwlth. 359, 400 A.2d 930, 932 (1979) (upholding award of delay dam-

ages). The Bankruptcy Court denied Cornell's claim for delay damages caused by D.L. Smith's breach. The Bankruptcy Court found that the eleven month delay in completing the Project may have occurred irrespective of D.L. Smith's actions. Specifically, the Bankruptcy Court cited the following specific events which delayed completion of the Project:

(1) February 6, 1995—implementation of new OSHA "fall protection" standards that imposed restraints on D.L. Smith workers, thereby impeding their mobility and reducing their productivity;

(2) March 3, 1995—implementation of new OSHA lead regulations reducing worker productivity and causing time delays with respect to the gathering of and dressing into protective clothing; the gathering, maintaining and repairing of equipment; and required additional breaks to relieve employee stress caused by heat;

(3) March 29, 1995—Cornell's improper removal of D.L. Smith's temporary staging platform at Berks Station causing four week delay in repairing and re-erecting platform;

(4) May 18, 1995—the Philadelphia Transit Consultants' ("PTC") implementation of rigorous inspection standards causing 16 day delay in D.L. Smith's progress;

(5) June 21, 1995—Cornell's failure to remove excess concrete from lips, faces and edges of bents on the Project; and

(6) August 31, 1995—Cornell's failure to cooperate in scheduling D.L. Smith's work.

---

9. The court notes that even though the Bankruptcy Court determined that $10,535.00 was an outstanding balance owed to D.L. Smith, that figure was not taken into account when the Bankruptcy Court determined the amount of work actually completed by D.L. Smith. The Bankruptcy court divided the amount paid by Cornell to D.L. Smith, $842,535.00, by the contract price, $975,000.00 to arrive at its 86.4% work complete figure. However, if the Bankruptcy Court also determined that $10,535.00 was an outstanding balance owed to D.L. Smith, such figure should have been factored into the Bankruptcy Court's ratio to determine the amount of work completed on the Project by D.L. Smith. This problem illustrates the reason why the court will remand this action for further consideration of what amount of retainage withheld by Cornell constitutes work completed by D.L. Smith.

In addition the court noted that even William R. Mitchell, Cornell's senior vice president, admitted that "D.L. Smith was delayed from finishing their [sic] contract through no fault of D.L. Smith or Cornell & Company, Inc., for some eleven months." (Bankr.Ct. ContiMortgae Mot. for Fees and Costs Against Opinion at 34.) Based on this evidence, the Bankruptcy court denied Cornell's claim for delay damages.

Cornell argues that the Bankruptcy Court's refusal to grant it delay damages against D.L. Smith was clearly erroneous because it misunderstood the nature of the delay damages sought by Cornell. Specifically, Cornell argues that it is seeking only recovery for increased overhead costs of $215,533.00, attributable solely to D.L. Smith due to its failure to return to the project in August 1996, once all other delays had been cured and substantial completion had been reached. Cornell argued that it was not seeking any damages for delays caused earlier in the project, such as those cited by the Bankruptcy Court which occurred in 1995. It appears that the Bankruptcy Court's opinion did not address D.L. Smith's responsibility for any delays associated with the period between 1996 and 1997. Thus, the court will remand the action back to the Bankruptcy Court for a determination of D.L. Smith's responsibility for any delay associated with that time period.

## IV. CONCLUSION

For the foregoing reasons, the court will remand the action back to the Bankruptcy Court for proceedings consistent with the court's Memorandum.

An appropriate Order follows.

## ORDER

AND NOW, TO WIT, this 21st day of December, 1999, upon consideration of the appeal of appellants Seaway Painting, Inc. and Cornell and Company, Inc. and cross-appeal of appellee and cross-appellant D.L. Smith Company from a final judgment issued in a core proceeding in the United States Bankruptcy Court for the Eastern District of Pennsylvania, IT IS ORDERED that the action is REMANDED back to the United States Bankruptcy Court for the Eastern District of Pennsylvania for proceedings consistent with the memorandum accompanying this court's Order.