## Joan I. Glisson Trust v. The Greater Delaware Valley Savings Bank

---

3. Plaintiffs have never filed anything to receive any share of the funds held in escrow.

514

*Steven Sugarman*, for appellant.
*Nicholas Guarente*, for appellee.

GREEN, *J.*, September 12, 2013—The appellant, the Greater Delaware Valley Savings bank, d/b/a/ Alliance Bank (herein "Alliance Bank"), has appealed this court's May 29, 2013, verdict and judgment order in favor of Joan I. Glisson, Trustee of the Joan I. Glisson Trust in the amount of $294,103.06, together with post-judgment interest, and further assessment of counsel fees and costs.[1] The verdict and judgment order was entered following this court's consideration of the testimony, exhibits and other evidence admitted during the non-jury trial of this civil

---

1. The Trust filed a petition for approval of costs on or about June 19, 2013. Said petition is stayed pending the instant appeal.

action on May 3, 2013, and upon review of the proposed findings of fact and conclusions of law received from the parties in support of their various claims and defenses.[2]

## FACTUAL HISTORY:

Joan I. Glisson is the grantor, trustee and a beneficiary of the Joan I. Glisson Trust (herein "the Glisson Trust" or "the Trust"). Alliance Bank is a wholly owned subsidiary of Alliance Bancorp, Inc. of Pennsylvania, and is registered to conduct business in Pennsylvania, having a business location at 541 Lawrence Road, Broomall, Marple Township, Delaware County, Pennsylvania, (herein "Alliance Bank"). Kitchin Associates, LLC., is a defunct limited liability company which formerly conducted business at 1400 Chester Pike, Sharon Hill Borough, Delaware County, Pennsylvania, (herein "Kitchin Associates"). Todd R. Kitchin, is an adult individual who was a member and agent of Kitchin Associates, (herein "Todd Kitchin"). Richard R. Kitchin, is an adult individual who was a member and agent of Kitchin Associates, (herein "Richard Kitchin").

On February 7, 2000, the Glisson Trust, which was created in 1996, was the owner under a deed of commercial real estate known generally as 1400 Chester Pike, Sharon Hill Borough, Delaware County, Pennsylvania. At that time, Joan I. Glisson and her late husband, Maurice J. Glisson, were the corporate treasurer and president respectively of two Pennsylvania business corporations,

---

2. An order denying appellant's post-trial motions was entered on or about June 20, 2013. A praecipe to enter judgment pursuant to court order was not filed until August 15, 2013.

516

M & J Roofing Supplies, Inc., and J & M Window Manufacturing.

On February 7, 2000, Joan I. Glisson and Maurice J. Glisson entered into a written business loan agreement with Alliance Bank to obtain $300,000.00 for the use of M & J Roofing Supplies, Inc. The business loan promissory note was secured, in part, by a mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises given to Alliance Bank, by the Glisson Trust. (Plaintiff exh. F-1.)

On June 1, 2001, Kitchin Associates, entered into a written agreement for the sale of real estate with the Glisson Trust, concerning the 1400 Chester Pike, Sharon Hill Borough premises. (Plaintiff exh. M.). On July 3, 2001, at the request of the late Maurice Glisson, Alliance Bank agreed to accept an assignment of the Kitchin Associates promissory note and mortgage to the Glisson Trust as substitute collateral for the M & J Roofing Supplies, Inc., business loan, in exchange for Alliance Bank releasing its mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises. On July 5, 2001, Alliance Bank released its mortgage upon the 1400 Chester Pike, Sharon Hill Borough premises, and accepted the assignment of the Kitchin Associates promissory note and mortgage to the Glisson Trust as substitute collateral. (Plaintiff exhs. U and U-1.). On July 11, 2001, the Glisson Trust conveyed the 1400 Chester Pike, Sharon Hill premises to Kitchin Associates for $300,000.00. (Plaintiff exh. V.). On July 11, 2001, the Glisson Trust, by Joan I. Glisson, Trustee, executed the documents required by Alliance Bank including an assignment of the Kitchin Associates to Glisson Trust mortgage, necessary to complete the

substitution of collateral.

On July 11, 2001, the Glisson Trust executed the commercial guaranty. (Plaintiff exh. R.). The commercial guaranty is secured by collateral. In part, the commercial guaranty provides as follows: "This Guaranty is secured by Assignment of $300,000.00 Promissory Note and Purchase Money Mortgage from Kitchin Associates, LLC, dated July 11, 2001, and covering the property known as 1400 Chester Pike, Borough of Sharon Hill, Delaware County, Pennsylvania, Parcel No. 41-00-00335-00, and any and all proceeds thereof. Property description attached hereto." (Plaintiff exh. R, pg. 2.).

On July 11, 2001, Alliance Bank secured the commercial guaranty executed by the Glisson Trust by requiring the Glisson Trust to execute the commercial pledge agreement. (Plaintiff exh. S-1.). In part, the commercial pledge agreement provides as follows: "Lender may hold the Collateral until all indebtedness has been paid and satisfied. Thereafter, Lender may deliver the Collateral to Grantor or to any other owner of the Collateral." (Plaintiff exh. S-1, pg. 2.). The commercial guaranty and the commercial pledge agreement each relate to a loan transaction between Alliance Bank, as lender, and M & J Roofing Supplies, Inc. The loan transaction took place on February 7, 2000, when Joan I. Glisson, who is the grantor, trustee and a beneficiary of the Glisson Trust, and her late husband, Maurice J. Glisson, executed a business loan agreement as officers of M & J Roofing Supplies, Inc., borrowing $300,000.00 from Alliance Bank.

On March 31, 2003, Joan I. Glisson and Maurice J.

Glisson paid the M & J Roofing Supplies, Inc. loan balance due Alliance Bank, in full. On April 30, 2003, Maurice J. Glisson died. In error, on May 30, 2003, Alliance Bank through its employees prepared a satisfaction piece for the Kitchin Associates to Glisson Trust mortgage, the above referenced substituted collateral for the Alliance Bank loan to M & J Roofing Supplies, Inc.

On June 2, 2003, Alliance Bank marked as satisfied the M & J Roofing Supplies, Inc., loan of February 7, 2000; but, rather than return the Kitchin Associates to Glisson Trust Mortgage — the substituted collateral — to the Trust on June 3, 2003, Alliance Bank filed the satisfaction piece prepared in error and mistakenly satisfied the Kitchin Associates mortgage. (Plaintiff exhs. AA, BB and CC.).

On March 3, 2005, and without the knowledge of the Glisson Trust, Kitchin Associates sold the 1400 Chester Pike, Sharon Hill premises to CLAM Enterprises, LLC, for $402,000.00. At closing on the sale of the premises, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin kept the net proceeds of the sale including the balance then outstanding on the Kitchin Associates July 11, 2001, loan to the Glisson Trust.[3]

On or about September 8, 2008, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin ceased payment to the Glisson Trust on the Kitchin Associates promissory note of July 11, 2001, and the Glisson Trust discovered the Kitchins' wrong doing. On or about September 8, 2008,

---

3. This court ultimately determined that Kitchin Associates, Richard Kitchin and Todd Kitchin, each acted intentionally and unlawfully in dissipating the proceeds from the sale of the 1400 Chester Pike, Sharon Hill premises.

the Trust discovered the outstanding principal balance of $201,287.73 on the Kitchin Associates promissory note of July 11, 2001, was uncollectable because Alliance Bank's mistaken satisfaction of the Kitchin Associates Mortgage destroyed the security interest the Glisson Trust would have had in the 1400 Chester Pike, Sharon Hill Borough premises. Following their default, Kitchin Associates, Richard R. Kitchin and Todd R. Kitchin pursued bankruptcy protection. The Glisson Trust recovered $51,500.00 of its loss in the Todd R. Kitchin bankruptcy proceeding.

The Glisson Trust has never been revoked, and Joan I. Glisson who is the grantor of this Trust remains the trustee and beneficiary of the Trust. In her management of the Glisson Trust as trustee, Joan I. Glisson has acted consistently with the advice of estate legal counsel. (Plaintiff exh. TT.). The commercial pledge agreement was signed on behalf of the Glisson Trust in favor of Alliance Bank. (Plaintiff exh. S-1.). The commercial pledge agreement directs the Glisson Trust to deliver the pledged collateral to Alliance Bank, and the pledge agreement directs Alliance Bank to return the pledged collateral to the Glisson Trust once the M & J Roofing Supplies, Inc., business loan promissory note of February 7, 2000, is paid in full. (Plaintiff exh. S-1.).

## CLAIMS AND DEFENSES:

At trial, the Glisson Trust asserted that Alliance Bank failed to adequately protect the collateral it delivered to the bank and failed to return the collateral to the Trust in breach of the commercial pledge agreement. The Glisson Trust also alleged that Alliance Bank was negligent and

the negligent conduct of Alliance Bank was a factual cause resulting in the damages sustained by the plaintiff.

Alliance Bank asserted the following defenses: (1) that the Glisson Trust lacked standing to bring a civil claim against the bank, (2) that Pennsylvania law obligated Alliance Bank to satisfy the Kitchin Associates purchase money mortgage — the collateral, (3) that the applicable statutes of limitations bar both the Trust's contract and negligence claims, and (4) that the damages claimed by the Glisson Trust were grossly inflated, in that:

(a) the Trust failed to mitigate its damages;

(b) the Trust improperly includes its attorney's fees as an item of damages;

(c) the Trust failed to credit its bankruptcy court recovery against principal before calculating pre-judgment interest; and,

(d) the Trust improperly calculated pre-judgment interest at 8%.

A. Breach of Contract

To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005). A breach must have been a material breach of the contract. In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be

deprived of the benefit which he or she reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he or she will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or offer to perform will cure his or her failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing. *Oak Ridge Constr. Co. v. Tolley*, 504 A. 2d 1343, 1348 (Pa. Super. Ct. 1985) citing Restatement (Second) of Contracts §241 (1981).

On May 3, 2013, Kathleen Lynch, an employee of Alliance Bank testified during the trial of this civil action. Through her testimony, Kathleen Lynch demonstrated specific knowledge of the applicable Alliance Bank procedures and protocols for the safe keeping and management of pledged collateral. (N.T., 05/03/13, pp. 74-124). Ms. Lynch identified the various Alliance Bank officers and employees who participated in the various dealings and transactions between Alliance Bank and the Glisson Trust. (N.T., 05/03/13, p. 76). Kathleen Lynch admitted Alliance Bank made a mistake when, following the payment in full of the M & J Roofing Supplies, Inc., business loan promissory note of February 7, 2000, an employee of Alliance Bank satisfied the Kitchin Associates mortgage rather than returning the Kitchin Associates mortgage to the Glisson Trust as required by the terms of the commercial pledge agreement. (N.T., 05/03/13, p.p. 84, 102). The mistaken or negligent conduct

of the Alliance Bank employee rendered valueless the incorporeal property delivered to Alliance Bank by the Glisson Trust. (N.T., 05/03/13, pp. 93-94). This court found the testimony offered at trial by witness, Kathleen Lynch, to be credible.

This court ultimately determined that the Glisson Trust proved by a preponderance of the evidence as follows:

(a) The Glisson Trust delivered the pledged collateral — the Kitchins' purchase money mortgage — to Alliance Bank;

(b) M & J Roofing Supplies, Inc., paid in full the indebtedness due Alliance Bank under the terms of the commercial loan agreement;

(c) As a guarantor of that Alliance Bank loan, Glisson Trust had completed its performance under the express terms of the commercial guaranty and the commercial pledge agreement (Plaintiff exhs. R and S-1);

(d) Glisson Trust, as the owner of the pledged collateral, was entitled to the return of the collateral on or about June 2, 2003;

(e) Alliance Bank failed to exercise or use reasonable care in the preservation of the collateral when its employee mistakenly or carelessly caused the collateral — the Kitchins' purchase money mortgage — to be marked satisfied rather than delivering that collateral back to the Glisson Trust through an appropriate reassignment of that purchase money mortgage; and,

(f) As the injured party, the Glisson Trust was deprived

of its security interest in the 1400 Chester Pike, Sharon Hill Borough premises exposing plaintiff to a significant financial loss.

The Glisson Trust proved a material breach of contract by Alliance Bank within the meaning of Restatement (Second) of Contracts §241 (1981). The commercial guaranty and the commercial pledge agreement between plaintiff Glisson Trust and defendant Alliance Bank created a bailment by express contract. "Bailment" is defined as a delivery of personalty for the accomplishment of some purpose upon contract, express or implied. After that purpose has been fulfilled, the personal property shall be delivered to its owner, otherwise handled according to its owner's directions, or kept until reclaimed by the owner. When a bailment is for a mutual benefit of the bailor, here the Glisson Trust, and bailee, here Alliance Bank, the bailee must use ordinary diligence and is liable for ordinary negligence. *Prince v. Brown*, 680 A.2d 1149 (Pa. 1996). In the instant case, the commercial pledge agreement imposed a duty to "use ordinary reasonable care" upon Alliance Bank, as Lender, in its maintenance of the collateral. (Plaintiff Exh. S-1 pg. 2.) On termination of a bailment, the bailor, here Glisson Trust, is entitled to the return of the identical thing bailed. *Schell v. Miller North Broad Storage Co.* 16 A.2d 680 (Pa. Super. Ct. 1940). Here, the Glisson Trust, the bailor, did not receive from Alliance Bank, the bailee, a return of the Kitchins' purchase money mortgage, the thing bailed, in breach of the collateral pledge agreement and in breach of long standing law in the Commonwealth of Pennsylvania concerning the bailment of corporeal or incorporeal

personal property. When a bailee fails to act as required in the contract of bailment and the result is a loss of the subject of the bailment, that bailee is liable to the bailor of the property. *Leprino Foods Co. v. Gress Poultry, Inc.* 379 F. Supp. 2d 659 (M.D. Pa. 2005).

This court found that the Trust sustained the following damages as a direct and foreseeable result of Alliance Bank's breach:

(a) The principal balance on the Kitchins' promissory note as of September 8, 2008, totaled $201,287.73;

(b) The principal balance was reduced by the payment received through the Trust's effort to mitigate damages from the Todd R. Kitchin Bankruptcy Estate on or about May 25, 2011, in the sum of $51,500.00;

(c) The Trust's damages included counsel fees expended as a cost of mitigating damages through the Bankruptcy Court in the sum of $15,000.00;

(d) The Trust was entitled to pre-judgment interest at six (6%) percent from September 8, 2008, to May 24, 2011, on the principal sum of $201,287.73, and from May 25, 2011 to the verdict date on the sum then due on May 24, 2011, less $36,500.00; and

(e) The Trust was entitled to post-judgment interest at six (6%) percent.

B. Negligence Claim

The Glisson Trust asserted that Alliance Bank was negligent in its maintenance and care of the collateral,

which caused plaintiff to suffer the damages described above. "Negligence" has been described as the absence of ordinary care a reasonably prudent person would use in the circumstances presented. Negligence may consist of an act or a failure to act when there is a duty to do so. *Martin v. Evans*, 711 A. 2d 458 (Pa. 1998). To prove negligence, the Glisson Trust must prove: (a) Alliance Bank failed to exercise ordinary care in preserving the Kitchins' purchase money mortgage; (b) the satisfaction of the Kitchins' purchase money mortgage was a factual cause in bringing about the damages sustained by plaintiff; and (c) the extent of the damages sustained by the plaintiff. *Gorman v. Costello*, 929 A.2d 1208 (Pa. Super. 2007).

The Glisson Trust has proved the conduct of Alliance Bank in mistakenly or carelessly satisfying the Kitchins' purchase money mortgage in June 2003, is negligence, and the Trust further proved this negligent act resulted in the destruction of the collateral and the damages sustained by Glisson Trust described at length above. The Glisson Trust also proved it did not recognize the negligence or the damages it sustained until September 8, 2008, when the Kitchins' defaulted on the promissory note.

C. Standing

The bank's assertion of standing as a defense is without merit. The Glisson Trust is in privity of contract with Alliance Bank, and that contract — the commercial pledge agreement — created a bailment under the terms of which defendant agreed to exercise care in maintaining the incorporeal property — the Kitchins' purchase money mortgage — delivered by the Trust as a bailor to Alliance

Bank as a bailee. Therefore, the standing defense fails.

### D. Obligation to Satisfy the Purchase Money Mortgage

This defense on its face is without merit. The bank's obligation under the commercial pledge agreement was to reassign the Kitchins' purchase money mortgage to plaintiff in June 2003. The bank simply failed to do so.

### E. Statute of Limitations

Alliance Bank asserts the breach of contract claim raised by the Trust is barred by the four year statute of limitations. 42 P.S. §5525 (7). However, the commercial pledge agreement which is the basis for the contract claim was executed by Alliance Bank and the Trust, and is an agreement made under seal having "the effect of a sealed instrument according to law." (Plaintiff exh. S-1, pg. 5.) As such, a twenty year statute of limitations applies to plaintiff's contract claim under 42 P.S. §5529. For this reason, the statute of limitations defense fails as to the breach of contract claim.

The bank asserted the negligence claim raised by plaintiff Glisson Trust is barred by the two year statute of limitation. 42 P.S. §5524 (7). The Glisson Trust argues that, under the circumstances presented in this case, the Trust did not know it had been harmed through the negligent act of Alliance Bank, and for this reason, the discovery rule applies tolling the statute of limitations. The trust claims the damages it sustained were concealed for nearly six and one-half years from June 2003 until the Kitchins' default on the promissory note on September 8, 2008.

The Glisson Trust knew the Kitchin Associates

purchase money mortgage was satisfied in June 2003. The discovery rule has no application in this case, and the Trust's negligence action is barred by the two year statute of limitations.

## CONCLUSION:

The Glisson Trust proved by a preponderance of the evidence:

(a) The Glisson Trust delivered the pledged collateral — the Kitchins' purchase money mortgage — to Alliance Bank;

(b) M & J Roofing Supplies, Inc., paid in full the indebtedness due Alliance Bank under the terms of the commercial loan agreement;

(c) As a guarantor of that Alliance Bank loan, Glisson Trust had completed its performance under the express terms of the commercial guaranty and the commercial pledge agreement (Plaintiff exhs. R and S-1);

(d) Glisson Trust, as the owner of the pledged collateral, was entitled to the return of the collateral on or about June 2, 2003;

(e) Alliance Bank failed to exercise or use reasonable care in the preservation of the collateral when its employee mistakenly or carelessly caused the collateral — the Kitchins' purchase money mortgage — to be marked satisfied rather than delivering that collateral back to the Glisson Trust through an appropriate reassignment of that purchase money mortgage; and,

(f) As the injured party, the Glisson Trust was deprived of its security interest in the 1400 Chester Pike, Sharon Hill Borough premises exposing plaintiff to a significant financial loss.

The commercial guaranty and the commercial pledge agreement between the Glisson Trust and Alliance bank created a bailment by express contract. The Glisson Trust proved a material breach of the contract and is therefore entitled to damages that will compensate the Trust for the financial loss it sustained as a direct and foreseeable result of the bank's breach. This court appropriately determined that those damages totaled $294,103.06, together with post-judgment interest, and further assessment of counsel fees and costs.

For the aforementioned reasons, the trial court respectfully requests that its decision be affirmed.