# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 16, 2012

No. 11-30441

Lyle W. Cayce
Clerk

TANGO TRANSPORT, L.L.C.,

Plaintiff - Appellee

v.

TRANSPORT INTERNATIONAL POOL, INCORPORATED,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:08-CV-559

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In this diversity action, Tango Transport, L.L.C., requested a declaratory judgment against Transport International Pool, Inc. (TIP). TIP challenges both an adverse partial summary judgment and post bench-trial final judgment. For the latter, the district court concluded correctly that the contract relied upon by TIP was partially abrogated and first breached by it. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30441

I.

In early 2004, Tango and TIP entered into a sale-and-lease-back agreement involving 125 of Tango's trailers. Pursuant to a vehicle lease agreement (VLA), to be governed by Pennsylvania law, the trailers were to be returned to TIP on 28 February 2007 (February group).

Later in 2004, Tango and TIP entered into a similar agreement involving another 259 of Tango's trailers. That second agreement became part of the VLA, with these trailers to be returned to TIP on 31 July 2007 (July group).

Finally, in 2006, Tango and TIP entered into a separate rental agreement for 81 of TIP's trailers (TRAC trailers). It had a 39-month term.

Before the return deadline for the February group, however, compliance with the VLA's return provision became impossible because the VLA's return location for that group–TIP's Little Rock, Arkansas, facility–was shut-down. The deadline for the February group was moved initially to 30 March, but the parties subsequently reached a new agreement (some terms of which are disputed, as discussed below) to, *inter alia*:  commingle all of the February and July groups and return all of those trailers to Tango's Sibley, Louisiana, facility by 31 July 2007 for retrieval by TIP. (The VLA had provided that the July group was to be returned to the Sibley facility.)

TIP later informed Tango that TIP had sold the first 125 trailers to a third party, which would pick them up in Sibley. But, the third-party purchase fell through. Tango's Sibley lot became overcrowded with trailers unretrieved by TIP, preventing Tango from returning more before the 31 July return date for all the trailers in the first two groups. Meanwhile, TIP began selling them one-by-one from Tango's Sibley lot.

Despite the new agreement, TIP billed Tango for resulting late returns. Accordingly, Tango sought a declaration of its rights in federal court. In response, also in federal court, TIP obtained a writ of sequestration for the

No. 11-30441

TRAC trailers. Rental charges, storage fees, attorney's fees associated with the sequestration, and trailer-repair damages form the basis of this action.

Summary judgment was granted against TIP's claim regarding repair-damages computation. *Tango Transp., L.L.C. v. Transp. Int'l Pool, L.L.C.*, No. 5:08-CV-559, Mem. Order (W.D. La. 9 Nov. 2009). Following a subsequent five-day bench trial in June 2010, judgment was entered against TIP, based upon the district court's detailed and comprehensive opinion, which concluded that Tango: did not owe repair damages or delay-rental fees; and was entitled both to damages for storing the trailers and to attorney's fees for wrongful sequestration. *Tango Transp., L.L.C. v. Transp. Int'l Pool, L.L.C.*, No. 5:08-CV-559, Judgment (W.D. La. 22 Dec. 2010) (Bench-Trial Ruling). Subsequently, a magistrate judge's recommended amount of attorney's fees was adopted by the district court. *Tango Transp., L.L.C. v. Transp. Int'l Pool, L.L.C.*, No. 5:08-CV-559, Report and Recommendation (W.D. La. 15 Mar. 2011); *Tango Transp., L.L.C. v. Transp. Int'l Pool, L.L.C.*, No. 5:08-CV-559, Attorney's-Fees Judgment (W.D. La. 1 Apr. 2011).

## II.

TIP contends the district court erred in concluding: TIP, not Tango, breached the VLA; and Tango is entitled both to storage fees because of TIP's breach and to attorney's fees for the wrongful sequestration. (TIP also challenges the adverse summary judgment regarding repair-damages computation. Because of our related holding in part II.A.2. regarding Tango's not being liable for repairs, we need not reach this issue.)

Bench-trial factual findings are reviewed for clear error; conclusions of law, *de novo*. *E.g.*, *North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir. 1996); Fed. R. Civ. P. 52(a) ("[R]eviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility".). Mixed questions of law and fact are reviewed *de novo*. *E.g.*, *Bass v. Denney*, 171 F.3d

3

No. 11-30441

1016, 1021 (5th Cir. 1999). For this diversity action, Pennsylvania contract law and Louisiana unjust-enrichment and sequestration law control. Essentially for the reasons stated by the district court in its opinions, TIP's claims fail.

### A.

#### 1.

TIP contends: Tango materially breached the VLA by not having ready for pick up at the Sibley location 125 trailers on 30 March 2007 and 259 trailers on 31 July 2007; and, as a result, TIP is due rental fees for the late trailers and was excused from further performance under the VLA. *See Oak Ridge Const. Co. v. Tolley*, 504 A.2d 1343, 1348 (Pa. Super. Ct. 1985) (material breach of contract releases non-breaching party from further performance).

The district court concluded:  the VLA's return provisions had been abrogated and replaced with a new return agreement; under it, Tango was allowed to commingle for return purposes the February and July groups; this new agreement allowed Tango to return some trailers after the new March deadline, while returning others before the July deadline; and, regardless of when trailers were returned, rental payment on the two groups was to stop on the return dates provided in the VLA. Bench-Trial Ruling at 20-21.

As employed in the district court's opinion, "abrogate" means "to abandon" or, as *Black's Law Dictionary* defines it, "to annul". Bench-Trial Ruling at 20 (citing *Parking Auth. of the City of Wilkes-Barre v. Ten E. S. St. Co.*, 788 A.2d 1096, 1101 (Pa. Commw. Ct. 2001)); *Black's Law Dictionary* 7 (8th ed. 2004). The distinction between abrogation and modification is important for the matter at hand, because a modification would leave intact portions of the VLA utilized by TIP in its claims. But, the partial abrogation of the VLA would preclude TIP's relying on those provisions and undercut its claims.

The record supports the district court's abrogation conclusion. For example, an 11 April 2007 email from TIP's account representative states TIP

No. 11-30441

would "pull assets from each expiring group–some early since the 259 expire in Aug 07 and some late since the 125 expire[d] in Feb 07". A May 2007 email from that same person states payment by Tango for the February group had ended and payment for the July group would be for the full term "REGARDLESS of whether they have been turned in or not". Among other evidence, these emails establish the district court did not err in ruling: the parties had abandoned the VLA's return provisions; Tango was not in violation of the new agreement when it did not have 125 trailers ready for pickup on 31 March 2007; and, as a result, it was not liable to TIP for extra rental fees. Instead, as the district court ruled, TIP breached the new agreement when it over-billed Tango and failed to pick up the trailers. As such, Tango's obligations under the new agreement were released.

2.

TIP also contends Tango breached the VLA by not returning the trailers fully repaired. This contention fails because, as discussed above, we agree with the district court's conclusion that the relevant portions of the VLA were abrogated. The evidence–in particular the communications made to Tango that the trailers had been sold "as is" to a third party–supports the district court's conclusion that all provisions relating to the return of the trailers, including the provisions relating to their condition, were abrogated.

B.

TIP claims the storage-fees award is improper because: the VLA remained in effect, precluding an equitable claim for relief; and the award was not based upon any evidentiary support.

As discussed, the relevant portions of the VLA were abrogated. Therefore, the storage-fees award was not foreclosed by those abrogated provisions.

Moreover, the evidentiary support for the award was sufficient. The court used the amount TIP was expected to be unjustly enriched to determine the

No. 11-30441

amount of the award. The evidence established:  TIP expected to save an estimated $150,000 in fleet-operating expenses by avoiding transporting the trailers to a TIP facility; and, concomitantly, Tango's business operations were disrupted and it was prevented from bringing in new trailers for return to TIP.

As the district court concluded, TIP was not justified in failing to pick up these trailers. Under a quasi-contractual *quantum meruit* claim, Tango is entitled to damages for storing them, measured by TIP's unjust enrichment. *See Gulfstream Serv., Inc. v. Hot Energy Servs., Inc.*, 907 So. 2d 96, 100 (La. Ct. App. 1989); *see also Howell v. Rhoades*, 547 So. 2d 1087, 1089 (La. Ct. App. 1989).

C.

The attorney's-fees award was rooted in TIP's wrongful sequestration of the TRAC trailers. TIP contends the court erred in awarding those fees because: the writ of sequestration was not wrongful; Tango never sought to dissolve the writ; it withdrew its claim for sequestration damages; and it never established either that the fees were paid or that they were associated with dissolving the writ.

Tango's not pursuing damages associated with the writ does not preclude its recovering attorney's fees concerning it. In its oral waiver in district court, in which it only released its claim for damages incurred in connection with the sequestration because of the difficulty of proof, it explicitly reserved its right to claim those fees.

Tango pursued its sequestration claim by reconventional demand (in essence, it counter-claimed). *See Placid Refining Co. v. Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 611 (5th Cir. 1997) (reconventional demand identical to counter-claim).  As such, TIP's contention that Tango never sought dissolution of the writ is incorrect; dissolution is allowed by reconventional demand. La. Code Civ. Proc. art. 3506.

6

No. 11-30441

Under this reconventional demand, the district court concluded correctly that the writ was issued wrongfully. As discussed, Tango was never in breach of the VLA; and, therefore, the claimed debt which served as the basis for the sequestration was found never to have existed. In reaching this conclusion, the district court relied only on "facts known at the time the sequestration was requested". Bench-Trial Ruling at 5-16, 24-26. TIP could present no basis for the writ pursuant to the claimed breach of the VLA because the relevant provisions were abrogated and Tango was complying with the new agreement. Thus, the writ's issuance was wrongful. Upon this determination, the writ was dissolved. *See Luk-Shop, L.L.C. v. Riverwood LaPlace Assocs., L.L.C.*, 802 So. 2d 1291, 1293 (La. 2002) (when underlying debt is extinguished, writ is dissolved).

No authority is cited to support TIP's fees-not-paid contention. Therefore, it is abandoned. *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).

TIP's contention that Tango never established the fees were associated with dissolving the writ also fails. Again, this action resulted in its dissolution. Tango's supporting evidentiary submissions contained customary hourly rates and other detailed billing information. This evidence was uncontested. Obviously, objections from fee opponents should be precise. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988); *see also McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 405 (5th Cir. 1985). TIP did not object to any item of requested fees; it simply objected to Tango's entitlement to them.

III.

For the foregoing reasons, the judgment is AFFIRMED.